David Alan **MEREDITH**, Petitioner,

v.

Aristedes **ZAVARAS**, Respondent.

No. 97SA417.

Supreme Court of Colorado,
En Banc.

Feb. 23, 1998.

Rehearing Denied March 16, 1998.

David Alan Meredith, Pro Se

Gale A. Norton, Attorney General, Richard A. Westfall, Solicitor General, Martha Phillips Allbright, Chief Deputy Attorney General, Garth C. Lucero, Deputy Attorney General, Paul S. Sanzo, First Assistant Attorney General, Joseph Haughain, Assistant Attorney General, Civil Litigation Section, Denver, for Aristedes Zavaras, Executive Director of the Colorado Department of Corrections.

Justice MULLARKEY delivered the Opinion of the Court.

David Meredith, representing himself pro se, filed this original proceeding seeking a writ of mandamus to compel the respondent, Aristedes Zavaras (Zavaras), Executive Director of the Department of Corrections (the DOC), to comply with two orders of the Denver District Court (the Denver Court). Both orders directed the DOC to credit Meredith for 210 days presentence confinement. We issued a rule to show cause why Zavaras does not have to comply with the two orders. We now make the rule absolute and order Zavaras and the DOC to credit Meredith for 210 days presentence confinement.

## I.

On November 4, 1987, Meredith pled guilty to second degree burglary in Adams County District Court (the Adams Court). The Adams Court sentenced Meredith to four years in prison and awarded him sixty-two days presentence confinement credit (the first sentence).[1] Meredith was paroled on July 18, 1989.

Approximately three months later, on October 16, 1989, Meredith committed first degree aggravated motor vehicle theft. *See* § 18–4–409, 8B C.R.S. (1986 & 1987 Supp.). Following a jury trial, the Denver Court sentenced Meredith on June 9, 1990 to nine years in the custody of the DOC (the second sentence). Prior to being sentenced, Meredith had served 210 days in the Denver County jail. The Denver Court ordered that the second sentence run concurrently with any other sentences Meredith was serving and awarded Meredith the 210 days presentence confinement credit.

On February 11, 1993, Meredith filed a pro se motion in the Denver Court asserting that,

---

1. The Adams Court originally sentenced Meredith to five years incarceration. However, on December 8, 1988, the Adams Court granted Meredith's motion to reconsider the sentence and reduced the sentence from five years to four years.

contrary to the Denver Court's mittimus, the DOC subsequently transferred the 210 days presentence confinement credit to the first sentence imposed by the Adams Court. In that motion, Meredith asserted that he had discharged the first sentence before the 210 days presentence confinement credit was applied to it and he requested that the Denver Court order the DOC to recredit the 210 days presentence confinement credit to his second sentence. The Denver Court denied Meredith's motion without a hearing.

On August 25, 1994, the court of appeals, in an unpublished opinion, reversed the Denver Court's ruling. *See People v. Meredith,* No. 93CA1082 (Colo.App.1994) (not selected for official publication). The court of appeals agreed with Meredith that the record did not demonstrate either whether Meredith's first sentence had been discharged, or if the first sentence had been discharged, when the discharge had occurred. Accordingly, the court of appeals held that Meredith was entitled to a hearing on the issue of whether the first sentence had been discharged and remanded the case to the Denver Court.

Despite the court of appeals' order remanding the case, the Denver Court did not set the case for a hearing.[2] On May 28, 1997, almost three years after the court of appeals entered its remand order, Meredith filed another pro se motion in which he again requested a hearing to determine his presentence confinement credit. Upon receiving Meredith's motion, the Denver Court ordered the People to set the case for a hearing. On August 8, 1997, the Denver Court held the hearing and the People conceded that Meredith was entitled to the 210 days presentence confinement credit which the Denver Court originally awarded. In its

written order dated August 11, 1997 (the August 11, 1997 Order), the Denver Court made the following findings of fact and conclusions of law:

> I find that, in accordance with the sentencing judge's mittimus in this case, Defendant was indeed entitled to 210 days in presentence confinement credit against this sentence. I also find that DOC correctly awarded Defendant these 210 days of credit in its initial time computations. However, I also find that DOC transferred these credits to Defendant's burglary conviction [the first sentence], and that at the time of this transfer Defendant had already discharged his burglary sentence. Accordingly, I conclude that the transfer of these credits was erroneous, and not within DOC's authority.

The Denver Court ordered the DOC to recredit Meredith for the 210 days presentence confinement credit which the Denver Court originally ordered.

Subsequent to the August 11, 1997 Order, the People petitioned for a rehearing. In their motion for reconsideration, the People explained that counsel for the DOC, through a letter dated August 29, 1997 and accompanying synopsis explaining the DOC's position, informed the Denver District Attorney that the DOC believed the Denver Court had erred in the August 11, 1997 Order. The People attached the DOC's synopsis to their motion for reconsideration. In that synopsis, the DOC argued that the Denver Court erred when it ordered the DOC to apply the 210 days presentence confinement credit to the second sentence because Meredith was still on parole when he committed the second felony. The DOC asserted that section 16–11–306, 6 C.R.S. (1997),[3] precluded the Den-

---

2. In its order requiring the DOC to recredit the 210 days presentence confinement credit to the second sentence, the Denver Court explained:

    Despite that order of remand, my predecessors in this Courtroom failed to set the case for any hearing. It appears the case simply fell through the cracks between the court of appeals and this District Court's clerk's office, and for that I repeat the apologies to Defendant and to the court of appeals which I made in open court.

3. Section 16–11–306, 6 C.R.S. (1997), provides:

    A person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his sentence for the entire period of such confinement. At the time of sentencing, the court shall make a finding of the amount of presentence confinement to which the offender is entitled and shall include such finding in the mittimus. Such period of confinement shall be deducted from the sentence by the department of corrections. If a defendant is serving a sentence or is on parole for a previous offense when he commits a new offense and he

ver Court from applying the presentence confinement credit to the second sentence. The DOC also argued that the Denver Court lacked jurisdiction to rule that Meredith had discharged the first sentence imposed by the Adams Court.

In an order dated September 18, 1997 (the September 18, 1997 Order), the Denver Court denied the People's motion for reconsideration and ordered the DOC to comply immediately with the August 11, 1997 Order. The Denver Court explained that the People had had six weeks to prepare for the August 8, 1997 hearing and that the People had a full opportunity to present evidence and to argue whether Meredith had discharged his first sentence from the Adams Court when the Denver Court imposed the second sentence.[4] The Denver Court reiterated that, at the August 8, 1997 hearing, the Denver District Attorney conceded that the first sentence had been discharged and that Meredith was entitled to the 210 days presentence confinement credit the Denver Court originally awarded. The Denver Court explained:

> The Department of Corrections is not a party to this case, and the Attorney General's Office is not counsel of record of any party. I understand and appreciate that the Department of Corrections and the Attorney General may have views and information about this issue, and I even understand they may have evidence indicating that when Defendant was sentenced in this case his Adams County burglary sentence may not in fact have been discharged. But it was incumbent upon the

Denver District Attorney's Office to solicit those views, and to gather that evidence, in the six weeks it had to prepare for the August 8, 1997 hearing. It failed to do so, apparently failed to look into this matter at all, and instead confessed the issue. There is no explanation for this failure in the Motion for Reconsideration, and I am not inclined, especially under all the circumstances of this case, to reopen criminal issues [sic] which have been resolved after a hearing with notice to all parties, just because one arm of the executive branch has no idea what the other is doing.

The Denver Court also disagreed with the DOC's assertion that the Denver Court lacked jurisdiction to decide how much presentence confinement credit to award Meredith in the second sentence. On this point, the Denver Court highlighted the fact that the court of appeals remanded the case to the Denver Court expressly to make this determination. The People did not appeal either the August 11, 1997 Order or the September 18, 1997 Order.

On October 3, 1997, Zavaras filed in this court a petition for relief pursuant to C.A.R. 21. In his petition, Zavaras raised essentially the same arguments that counsel for the DOC made in the synopsis which the Denver District Attorney attached to its motion requesting the Denver Court to reconsider the August 11, 1997 Order. We denied Zavaras's petition for relief en banc on October 17, 1997.[5]

---

continues to serve the sentence for the previous offense while charges on the new offense are pending, the credit given for presentence confinement under this section shall be granted against the sentence the defendant is currently serving for the previous offense and shall not be granted against the sentence for the new offense.

4. There is an ambiguity between the two Denver Court orders. In the August 11, 1997 Order, the Denver Court found that Meredith had discharged the first sentence as of the date the DOC transferred the 210 days presentence confinement credit to the first sentence. In the September 18, 1997 Order, however, the Denver Court explained that the August 11, 1997 Order addressed the issue of whether or not Meredith had discharged the first sentence at the time the Denver Court originally sentenced Meredith.

Whether or not the Denver Court properly focused on the discharge as of the second sentencing date or as of the date that DOC transferred the credit to the first sentence is not before us. As we explain *infra*, the People did not appeal either the August 11, 1997 Order or the September 18, 1997 Order. Consequently, those orders were final and binding.

5. Although we denied the DOC's petition for relief pursuant to C.A.R. 21, that denial is not dispositive of this case. In *Bell v. Simpson*, 918 P.2d 1123, 1125 n. 3 (Colo.1996), we explained that a decision by this court to exercise original jurisdiction under C.A.R. 21 is discretionary and that a denial of a C.A.R. 21 petition does not indicate that we considered the merits of the petitioner's argument.

Subsequent to our denial of Zavaras's petition, the DOC continued not to follow the Denver Court's orders. Once again, Meredith, acting pro se, attempted to force the DOC to comply with the Denver Court's orders by filing his own C.A.R. 21 petition in this court. In his petition, Meredith requested that we issue a writ of mandamus ordering the DOC to comply with the orders. We issued a rule to show cause why Zavaras, as Executive Director of the DOC, should not have to comply with the August 11, 1997 and September 18, 1997 Orders.

Meredith argues here, and the DOC acknowledges in its response to the rule to show cause, that had the DOC complied with the August 11, 1997 Order, Meredith would have been entitled to release from DOC custody on September 6, 1997 instead of April 9, 1998.

## II.

### A.

■ As an initial matter, we may issue a writ of mandamus to the DOC requiring the DOC to comply with a district court order. In our recent opinion of *Bullard v. Department of Corrections*, 949 P.2d 999 (Colo. 1997), we issued a rule to show cause under C.A.R. 21 to review whether the defendant was entitled to a writ of mandamus ordering his discharge from the DOC. In *Bullard*, the Montrose County District Court (the Montrose Court) issued an order which declared that the defendant had served the sentence previously imposed by it. The Montrose Court's order directed the DOC to release the defendant. The defendant argued that the Montrose Court's order also required the DOC to discharge him from a sentence imposed by the El Paso County District Court (the El Paso Court). The DOC responded by arguing that the Montrose Court's order was not valid and, additionally, that even if the Montrose Court's order were valid, the Montrose Court's order could not modify the El Paso Court's order. In challenging the Montrose Court's order, the DOC urged this court to find that order invalid because the Montrose Court allegedly disregarded a sentencing statute or interfered with the execu-

tive in performing its statutory duties. We rejected that argument and explained, "When a prisoner's sentence has been served, or when a sentence has been declared completed by a final and effective court ruling, the DOC must obey a judicial order for discharge that is not subject to appeal." *Bullard*, 949 P.2d at 1001. More broadly, we explained that when an executive officer, such as Zavaras, fails to comply with a final order of a trial court, the trial court may take appropriate steps to enforce its order. *See id.* (citing *State v. Pena*, 911 P.2d 48, 56 (Colo.1996)). While we declined to issue a writ of mandamus directing the defendant's release because the Montrose Court's order could not discharge the El Paso Court's order, we nevertheless made the rule absolute as to the Montrose Court's order. Had the Montrose Court's order been the only order at issue, we would have granted the defendant the mandamus relief that he had requested. Thus, consistent with our prior precedent, we may grant mandamus relief ordering the DOC to comply with a district court order.

### B.

■ A defendant requesting mandamus relief in a case such as this must satisfy a three-part test. *See Bullard*, 949 P.2d at 1003; *State v. Board of County Comm'rs*, 897 P.2d 788, 791 (Colo.1995); *Gramiger v. Crowley*, 660 P.2d 1279, 1281 (Colo.1983). First, the defendant must have a clear right to the relief sought. Second, the DOC must have a clear duty to perform the act requested. Third, the defendant must not have any other available remedy.

■ Regarding the third prong of the test, we conclude that Meredith does not have any other available remedy. The DOC argues that Meredith may pursue a writ of habeas corpus pursuant to section 13–45–101, 5 C.R.S. (1997), file a petition pursuant to Crim. P. 35(c) in the Adams Court requesting that court to enter a finding that the first sentence was discharged, or seek declaratory relief pursuant to C.R.C.P. 57. These arguments ignore the temporal reality of this case. Meredith pursued his remedies through the trial court and is not responsible

for the lengthy delays that occurred. On April 9, 1998, the DOC will be obligated to release Meredith even if the DOC continues to refuse to allocate the 210 days presentence confinement credit to the second sentence. Between now and then, Meredith cannot pursue these other avenues of relief in order to secure a release prior to April 9.

As to the first and second prongs of the test, we conclude that Meredith has satisfied those as well. The DOC argues that the Denver Court lacked jurisdiction to rule that Meredith had completed the first sentence and exceeded its jurisdiction when it ordered the DOC to apply the 210 days presentence confinement credit to the second sentence. We disagree. In this case, the Denver Court followed the remand order from the court of appeals by conducting a hearing for the purposes of determining whether and when Meredith had discharged the first sentence. At that hearing, the People conceded, as a factual matter, that Meredith had discharged his first sentence. Accordingly, the Denver Court found that for the purposes of the *sentence imposed by the Denver Court*, Meredith had discharged the first sentence and that the 210 days presentence confinement should be credited to the second sentence.

■ In *Bullard*, we explained that one district court does not have jurisdiction to modify another district court's sentence. *See Bullard*, 949 P.2d at 1001, 1003. There, we explained that a district court lacks authority to address the circumstances around a plea bargain, judgment of conviction, or court sentence entered in another district court. *See id.* at 1002–03. That concern, however, is not implicated in this case. Here, the Denver Court did not extend its inquiry to the circumstances or terms underlying the sentence imposed by the Adams Court. Rather, the Denver Court limited itself to the specific,

narrow inquiry that the court of appeals directed it to decide, namely, whether Meredith had *discharged* the first sentence for the purpose of assigning presentence confinement credits to the second sentence. This factual determination fell within the authority which we explained in *Bullard* a trial court retains when examining its own sentencing order—i.e., authority to review the circumstances of the sentence the trial court originally imposed. *See id.* at 1002.

■ Although the People could have appealed the Denver Court's orders, they did not.[6] *See* C.A.R. 4(b)(2) (providing that the People shall file a notice of appeal within forty-five days after the entry of judgment or order appealed from). Consequently, as was the Montrose Court's order in *Bullard*, the August 11, 1997 and September 18, 1997 Orders became final orders which were not appealed. *See Estep v. People*, 753 P.2d 1241, 1246 (Colo.1988) ("The timely filing of a notice of appeal is a jurisdictional prerequisite to appellate review."); *People v. Silvola*, 198 Colo. 228, 230, 597 P.2d 583, 584 (1979) ("The filing of a notice of appeal is mandatory and a jurisdictional prerequisite for appellate review of a lower court decision."). The Denver Court's orders were valid and "must be implemented by the DOC." *Bullard*, 949 P.2d at 1001. Therefore, Meredith had a clear right to the relief he requested and the DOC had a clear duty to comply with the August 11, 1997 and September 18, 1997 Orders.

■ The DOC relies upon *Outler v. Norton*, 934 P.2d 922 (Colo.App.1997), to argue that the DOC is not bound by the Denver Court's finding that Meredith discharged his first sentence. In that case, the inmate was placed on parole after serving two years of a four-year sentence for aggravated robbery. While on parole, the inmate committed a

---

**6.** To be clear, the issue of the proper interpretation of section 16–11–306 is not before us and we intimate no view as to the merits of the DOC's argument that section 16–11–306 requires a trial court to apply presentence confinement credit to a first sentence when the defendant commits a subsequent offense while on parole. The DOC urges us to rely on *People v. Hays*, 817 P.2d 546, 547 (Colo.App.1991), (holding that "[s]ince defendant was on parole when he committed this [second] offense, he continued to serve the sentence for the previous offense while charges in this [second] offense were pending whether he was in or out of physical confinement"), *cert. granted* (Colo.1991), *motion to dismiss appeal granted* (Colo.1991). The People could have raised the issue of whether or not the Denver Court properly interpreted section 16–11–306 had the People appealed the Denver Court's orders. Because the time for such an appeal has lapsed, we do not reach that issue here.

second aggravated robbery. The second sentencing court, in a Crim. P. 35(b) proceeding, reduced the second sentencing court's original sentencing order and also held that the inmate had completed the first sentence and was not on parole at the time of the second aggravated robbery. The People did not appeal that ruling. In a subsequent C.R.C.P. 106(a)(2) action initiated by the inmate, the inmate argued and the trial court ruled that the presentence confinement credit should be applied to the second aggravated robbery sentence. The court of appeals reversed that ruling and explained that "the second sentencing court had jurisdiction to determine inmate's status for its own sentencing purposes but that determination is not binding upon DOC in this proceeding." *Outler,* 934 P.2d at 926–927. It is not clear from the *Outler* opinion whether the second sentencing court ordered the DOC to apply the presentence confinement credit to the second sentence. However, to the extent that *Outler* stands for the proposition that the DOC is not bound by an unappealed trial court order requiring the DOC to apply presentence confinement credit to the defendant's sentence based upon the trial court's finding that the defendant discharged an earlier sentence, we now overrule that part of the *Outler* opinion. Of course, the People are free to pursue the normal appellate route to challenge the order in which the trial court made such a finding. Once the time for appellate review has passed, however, the DOC cannot assert that the trial court's determination is not binding upon it.

Were we to hold otherwise and permit the DOC to decline to comply with the unappealed Denver Court's orders, we would undermine the power of the judicial system to interpret the laws and impose criminal sentences. *See People v. Pate,* 878 P.2d 685, 694 (Colo.1994) (explaining that "it is axiomatic that the judiciary has the exclusive power to impose sentences which fall within the limits determined by the General Assembly"); *Lujan v. Colorado State Bd. of Education,* 649 P.2d 1005, 1025 (Colo.1982) (explaining that "it is clearly the province and duty of the judiciary to determine what the law is" (citing *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039

(1974))). Such a result is impermissible. A trial court must be able to enforce its final orders regarding the sentence the trial court renders, for without that power, "the role of the courts as a separate and independent branch of government would be meaningless." *Bullard,* 949 P.2d at 1002. Just as the DOC must comply with a trial court's mittimus order to take custody of a prisoner, so too must the DOC adhere to a trial court's order requiring the DOC to comply with the trial court's determination regarding presentence confinement credit. *See Department of Corrections v. Pena,* 911 P.2d 48, 55 (Colo. 1996) (explaining that the judicial branch of government has authority to assure that DOC performs its statutorily mandated duties). *See also Smith v. Miller,* 153 Colo. 35, 40, 384 P.2d 738, 741 (1963) ("The judiciary has its exclusive powers and functions, to wit: it has judgment and the power to enforce its judgments and orders.").

### III.

Accordingly, we make the rule absolute. We direct the DOC to comply immediately with the Denver District Court's orders of August 11, 1997 and September 18, 1997, both of which required the DOC to recredit Meredith's second sentence with 210 days presentence confinement for time served in the Denver County jail prior to receiving his second sentence.

SCOTT, J., specially concurs.

KOURLIS, J., specially concurs, and VOLLACK, C.J., joins in the concurrence.

Justice SCOTT specially concurring:

I fully agree with the majority's conclusion that Aristedes Zavaras and the Department of Corrections (DOC) should be directed "to comply immediately with the Denver District Court's orders." Maj. op. at 603. I write separately, however, because I believe a more efficient resolution of this matter is available to us. Rather than exercising this court's superintending authority pursuant to C.A.R. 21, I would have immediately transferred the petition to the trial court with

instructions that it treat the petition as a motion asking the trial court to enforce its orders by the issuance of an order to show cause why Zavaras and the DOC should not be held in contempt.

As the majority recognizes, when an executive officer fails to comply with the order of a trial court, the trial court has the power to enforce its own order. *See* Maj. op. at 602; *see also Bullard v. Department of Corrections*, 949 P.2d 999 (Colo.1997); *State v. Peña*, 911 P.2d 48 (Colo.1996). Specifically, the trial court can direct the official to show cause why he or she should not be held in contempt, and if the official continues to refuse to comply, the full range of contempt sanctions are available to compel obedience to the court's order. *See Bullard*, 949 P.2d at 1001; *Peña*, 911 P.2d at 56; *People v. Lockhart*, 699 P.2d 1332, 1336 (Colo.1985).

While this court certainly has the authority to issue a writ of mandamus, the more expeditious course would have been to transfer the case back to the district court rather than to proceed through our C.A.R. 21 procedures. As the majority notes, speedy relief is crucial because the petitioner would be released no later than April 9 even if the DOC's position were sustained and he may be entitled to a much earlier discharge. If the petition had been transferred to the trial court in December 1997, when Meredith's and the DOC's briefs had been filed in this court, the trial court probably could have disposed of the matter within the next ten days. In light of the trial court's fact finding capabilities, an attribute lacking in appellate courts, it could enforce or modify, as necessary, its orders in accordance with Meredith's liberty interests. Hence, the petitioner could have been discharged as early as December of last year.

Moreover, because we resolve this dispute under C.A.R. 21, if the DOC fails to follow our order, this court will have to consume additional time in order to enforce the order, requiring the appointment of a special master to hold a hearing and to make factual findings in the form of a recommendation to us regarding the DOC's compliance or lack

thereof. I believe the delay in addressing the petitioner's claims is unnecessary.

For this reason, I think the better practice would have been to transfer the case to the district court with instructions to take the necessary steps to enforce, or modify as appropriate,[1] its orders of August 11 and September 18, 1997, to the DOC.

Justice KOURLIS specially concurring:

I join the Majority opinion; however I write separately to emphasize certain matters of fact and law.

I.

First, on the substantive issue before the court, it is my view that the Denver District Court (Denver Court) had no jurisdiction or authority to change or affect the Adams County District Court (Adams Court) sentence and did not, in fact, affect that sentence. The Denver Court's authority was limited to making findings regarding the defendant's status for its own sentencing purposes. *See Outler v. Norton*, 934 P.2d 922, 926–27 (Colo.App.1997).

The Denver Court was directed by the court of appeals to determine whether Meredith's first sentence had been discharged. *See People v. Meredith*, No. 93CA10832 (Colo.App.1994)(not selected for publication). In fact, some of the confusion in this case might have been avoided if the Adams Court had been the one to make that determination.

However, the Denver Court did ultimately hold a hearing on the issue of the status of the defendant, to determine whether the presentence confinement time that Meredith had served should be applied against the Denver sentence. The Denver Court was within its jurisdiction to entertain that question because it related directly to the Denver sentence. For example, a sentencing court may make findings regarding a defendant's previous parole status in order to decide whether to impose a sentence in the aggravated range. *See* § 18–1–105(9)(a), 6 C.R.S. (1997)

---

1. This may be especially efficient when the trial court has issued more than one order and "an

ambiguity [exists] between the two ... orders." Maj. op. at 600 n. 4.

(requiring a minimum sentence of midpoint in the presumptive range if defendant was on parole for another felony at the time of commission of the offense).

However, in my view, any findings that the Denver Court made regarding the status of the Adams County sentence are not binding upon either the Adams Court or the Department of Corrections (DOC), except insofar as the Denver order directed the DOC to apply presentence confinement credit to the Denver sentence.[1] If the DOC has already applied presentence confinement credit to the Adams County sentence, it must reallocate that credit to the Denver sentence pursuant to court order.

## II.

Second, our holding today does not reallocate responsibility for the application of presentence confinement credit. It is clear in the statutes that the DOC has primary statutory responsibility for determining how to apply presentence confinement credit and I do not believe that this opinion questions that authority.

The statute addressing presentence confinement credit provides:

A person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his sentence for the entire period of such confinement. At the time of sentencing, the court shall make a finding of the amount of presentence confinement to which the offender is entitled and shall include such finding in the mittimus. Such period of confinement shall be deducted from the sentence by the department of corrections. If a defendant is serving a sentence or is on parole for a previous offense when he commits a new offense and he continues to serve the sentence for the previous offense while charges on the new offense are pending, the credit given for presentence confinement under this section shall be granted against the sentence the defendant is currently serving for the previous offense and shall not be

granted against the sentence for the new offense.

§ 16–11–306, 6 C.R.S. (1997).

The prior version of this statute provided for significant court discretion in the imposition of presentence confinement credit (PCC). In 1979 the statute was repealed and reenacted to remove that discretion. *See Godbold v. District Court,* 623 P.2d 862, 864 (Colo.1981); *People v. Dempsey,* 624 P.2d 374, 375 (Colo.App.1981). In *Dempsey,* the court of appeals held that:

[Section 16–11–306] removes from the trial court the discretion whether to grant or deny a defendant credit against his sentence for presentence confinement time, and imposes upon the Department of Corrections a duty to assure that credit is given in every case. Under the [statute as amended], the only judicial function is to make a finding of fact concerning the number of days spent by a defendant in presentence confinement.

*Dempsey,* 624 P.2d at 375. *See also People v. Patrick,* 683 P.2d 801, 803 (Colo.App.1983); *People v. Hardman,* 653 P.2d 763, 764 (Colo.App.1982).

In 1988 the statute was again amended to add the last sentence regarding the allocation of PCC days between sentences. Under the new language, if a defendant reoffends while on parole, any time served awaiting disposition of the second charge must be applied to the first sentence. The purpose of this language is to ensure that inmates do not receive double credit (against both the first and second sentences) for presentence incarceration. *See Outler v. Norton,* 934 P.2d 922, 927 (Colo.App.1997).

All cases decided prior to the addition of the most recent amendment to the statute indicate that the sole judicial function in connection with presentence confinement credit against a DOC sentence is to include on the mittimus the number of PCC days to which the defendant is entitled. *See Patrick,* 683 P.2d at 803; *Hardman,* 653 P.2d at 764; *Dempsey,* 624 P.2d at 375. The DOC then

---

1. For example, the Denver court would have had no jurisdiction to determine that the Adams County sentence was discharged and order the DOC not to hold Meredith any longer on the Adams County sentence.

has the statutory duty to credit the defendant with those PCC days. *See Dempsey,* 624 P.2d at 375. The amendment does not, in my view, change that allocation of responsibility. Hence, ministerial computation of days would remain the sole judicial function, and the DOC would be charged with applying the days to determine discharge date or parole eligibility date.

The court of appeals' opinion in *Outler* supports this interpretation of the statute and presents a remarkably similar factual setting to the case now before us. In *Outler,* the defendant was on parole when he committed a second offense. At a reconsideration hearing on the second sentence, the second sentencing court made a finding that the defendant had completed the first sentence and therefore had not been on parole at the time of the second offense. The People did not appeal that ruling. The difference between the present case and *Outler* is that the second sentencing court in *Outler* apparently did not actually order the DOC to apply PCC days to the second sentence. When the DOC applied the PCC days to the first sentence as was compelled by statute, the defendant filed a C.R.C.P. 106(a)(2) action naming the DOC as a party. In the Rule 106 proceeding, the trial court ruled that the DOC was required to apply the PCC days to the second sentence because of the second sentencing court's finding that the defendant had not been on parole at the time of the second offense. The *Outler* opinion does not state the purpose for which the second sentencing court made a finding regarding parole status. There is also no mention of the second sentencing court actually ordering the DOC to apply PCC days to its sentence. The court of appeals reversed, concluding that the second sentencing court's finding would not bind the DOC regarding whether or not the first sentence had been completed. The procedural posture of *Outler* presented different issues to the court than those raised in this case, however, both cases reaffirm the principal responsibility of the DOC to apply presentence confinement credit. Both cases also support the notion

that one sentencing court may not bind another sentencing court.

### III.

I turn now to the procedural posture of the case. We have before us an original proceeding brought by Meredith to seek enforcement of the Denver Court order. That order was directed to the DOC, and the DOC has ignored it.

In *Outler,* the only order that was directed to the DOC regarding PCC days came from the district court in the Rule 106 proceeding. The DOC did, in fact, appeal that order, and the *Outler* case was the result of that timely appeal. The *Outler* court held that the DOC was entitled to notice and a hearing regarding defendant's parole status for purposes of applying PCC days. *See Outler,* 934 P.2d at 927.

Both logically and by operation of precedent, the proper way to raise a PCC issue that involves parole determination would be a proceeding of which the DOC had notice. If the DOC has the statutory responsibility for assigning PCC days as reflected on the mittimus, and if the defendant disagrees with that assignment, the proper method would be to do as the defendant in *Outler* and file a Rule 106 action asking the court to review the DOC's finding regarding parole status.

Here, the DOC likely had no knowledge that any court had made a determination regarding the application of PCC days until the Denver Court entered its August 11, 1997 Order commanding the DOC to apply the credits against the second sentence.[2] Because this is a criminal case between the People and the defendant, the DOC had no standing to intervene and make its arguments. *See People v. Ham,* 734 P.2d 623, 626–27 (Colo.1987).

However, in order to function, the courts must necessarily presume that the People represent the position of the DOC whenever necessary. The People have the duty to obtain such information from the DOC as is necessary and to present that information to the courts in a timely manner.

---

2. The DOC's brief and accompanying documentation reflect that this determination resulted in erroneously accelerating Meredith's discharge date.

Here, once the People obtained the DOC information, they filed a motion for reconsideration and attached the DOC's synopsis.[3] In this synopsis, as well as in its briefs to this court, the DOC argues that the first sentencing court, not the second, had jurisdiction to determine whether its sentence had been discharged. Again, I emphasize that I agree that the Denver Court's order could not force the DOC to discharge Meredith on the Adams County sentence. The Denver Court had no jurisdiction to enter such an order. I agree with the Majority that under *Bullard v. Department of Corrections*, 949 P.2d 999 (Colo.1997), "a district court lacks authority to address the circumstances around a plea bargain, judgment of conviction, or court sentence entered in another district court." Maj. op. at 602. However, I also agree with the distinction drawn by the Majority that this does not divest the second sentencing court of its authority to make factual determinations relating to its own sentence.

The Denver Court's second order dated September 18, 1997 then denied the People's motion and again ordered the DOC to comply with its order regarding the allocation of PCC days. At this point, the DOC filed a C.A.R. 21 petition with this court asking for relief. The Rule 21 petition seeking intervention was filed on October 3, 1997. In this petition, the DOC noted that the People had advised that they would not appeal the September 18, 1997 Order. The petition was denied.

Once the DOC had exhausted its remedies, it continued to ignore the Denver Court order. I cannot sanction the DOC's continued refusal to comply with an unappealable court order. Certainly in general, the DOC must comply with whatever court orders are issued, or assure that the appropriateness of those orders is raised and resolved in a timely manner.

The People erred. The District Attorney conceded the discharge of the first sentence, thereby conceding not only a factual issue, but also a jurisdictional issue. That concession misled the trial court and disadvantaged the DOC. Nonetheless, it resulted in a final order directing that presentence confinement credit be applied to the Denver sentence. That order binds the DOC, and the DOC must credit Meredith with 210 days of presentence confinement credit on the Denver sentence. In order to serve the statutory goal of assuring that credit is not twice applied, the DOC must also subtract that same credit from the Adams County sentence, to the extent it was previously applied.

The only grounds upon which the DOC could ignore the Denver Court order would have been if Denver had no subject matter jurisdiction to enter such an order. There are, for example, certain issues that fall outside of the court's discretion, such as assignment of a defendant to a particular placement. *Cf. McDonnell v. Juvenile Court*, 864 P.2d 565, 569 (Colo.1993) (finding, in a C.A.R. 21 proceeding, that the juvenile court could not order the Department of Institutions not to place a juvenile in a specific institution); *People v. Young*, 894 P.2d 19, 20 (Colo.App. 1994) (noting that "a sentencing court has no authority to assign a defendant to [Regimented Inmate Training because] such authority has been delegated to the executive director of the Department of Corrections").

In this case, although the application of presentence confinement credit is an area left to DOC execution, the courts have a role in calculating it and including it on the mittimus for a given sentence. The Denver Court had subject matter jurisdiction sufficient to support the order it entered.

Hence, I agree that the DOC is bound by the Denver Court order and must apply 210 days of credit to Meredith's Denver sentence.

I am authorized to state that Chief Justice VOLLACK joins in this special concurrence.

3. As noted by the Majority, the People had conceded the point at the earlier hearing. It is not surprising then that the district attorney apparently did not zealously press the DOC's position, and later refused to appeal the order.