In re the PEOPLE of the State
of Colorado, Plaintiff–
Respondent,

v.

Curtis L. GRANGRUTH, Defendant–
Petitioner.

No. 99SA214.

Supreme Court of Colorado,
En Banc.

Dec. 6, 1999.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, John Lizza, First Assistant Attorney General, Litigation Section Denver, Colorado Attorneys for Plaintiff–Respondent.

David F. Vela, Colorado State Public Defender, M. Janet Laughon, Deputy State Public Defender, Fort Collins, Colorado Attorneys for Defendant–Petitioner.

Justice MARTINEZ delivered the Opinion of the Court.

In this original proceeding, Curtis Grangruth seeks to compel the Department of Corrections (the DOC) to comply with a written order issuing from the Larimer County District Court. The court ordered the DOC to apply a presentence confinement credit of 200 days to the sentence of imprisonment it had imposed. We issued a rule to show cause why the DOC should not be required to abide by the district court's order. The DOC argues that the Larimer Court's order contravenes the commands of section 16–11–306, 6 C.R.S. (1998), and is a judicial usurpation of executive duties. Having reviewed the arguments of both parties, we now make the rule absolute and instruct respondent to comply with the order of the Larimer County District Court.

## I.

On February 2, 1998, Grangruth pleaded guilty to assault in the second degree [1] before the Larimer County District Court. On April 3, 1998, the court sentenced Grangruth to two years of imprisonment and ordered that the sentence should run concurrently with a sentence previously imposed by the Jefferson County District Court.[2] At the time of this offense, Grangruth was on parole from the previous sentence. The court further ordered that Grangruth would be awarded 200 days of presentence confinement credit for time served at the Larimer County Detention Center while awaiting disposition of the Larimer County case.[3] The trial court noted the credit on the mittimus. Neither petitioner nor the district attorney objected to the trial court's computation of the credit or to its application of the credit to the Larimer County sentence.

Despite the court's mittimus order, the DOC proceeded to transfer the presentence confinement credit to the previous sentence, applying the provisions set forth under section 16–11–306, 6 C.R.S. (1998):

A person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his sentence for the entire period of such confinement. At the time of sentencing, the court shall make a finding of the amount of presentence confinement to which the offender is entitled and shall include such finding in the mittimus. Such period of confinement shall be deducted from the sentence by the department of corrections. *If a defendant is serving a sentence or is on parole for a previous offense when he commits a new offense and he continues to serve the sentence for the previous offense while charges on the new offense are pending, the credit given for the presentence confinement under this section shall be granted against the sentence the defendant is currently serving for the previous offense and shall not be granted against the sentence for the new offense.*

(Emphasis added.) On March 8, 1999, Grangruth responded by prosecuting a motion to compel, in which he challenged the DOC's authority to apply the credit in a manner that conflicts with the court's mittimus. The Larimer County District Court, in a minute

---

1. *See* § 18–3–203(1)(f), 6 C.R.S. (1998).

2. On May 6, 1992, the Jefferson County District Court sentenced Grangruth to eight years of imprisonment after being convicted of the crime of forgery, section 18–5–402, 8B C.R.S. (1992). Grangruth discharged his sentence to imprisonment on September 19, 1995 and commenced to serve a period of parole. On April 4, 1998, the same day that judgment entered in the Larimer case, the term of parole associated with the Jefferson sentence was revoked and Grangruth was remanded to the custody of the DOC.

3. The record reflects that petitioner was incarcerated at the Larimer County facility from September 16, 1997 to April 3, 1998.

order dated April 1, 1999, issued a "reminder" to the DOC that "200 days of presentence confinement was [sic] given."

It appears that the DOC initially complied with the order by recalculating the sentence so as to account for the 200 days of credited time. However, the DOC later reversed itself and withdrew the credit. On April 22, 1999, Grangruth filed a motion seeking relief under Crim. P. 35(c). Before receiving a ruling on the motion, Grangruth filed a motion to compel application of the presentence confinement credit to the Larimer case. On May 24, 1999, the court issued the following order: "It is ordered that the Department of Corrections shall grant Curtis L. Grangruth 200 days of presentence confinement credit in this case, 97CR1206. The Department of Corrections shall not employ C.R.S. § 16–11–306 to transfer this credit to any other case." No appeal was taken from the trial court's order.

■ Grangruth contends — and the DOC apparently concedes — that it has made no effort to comply with the court's final order. Petitioner, therefore, has come before this court to seek relief in the nature of a writ of mandamus. We have elected to exercise jurisdiction over this matter pursuant to section 3, article VI of the Colorado Constitution and C.A.R. 21 in order to resolve what has become a recurrent conflict between the courts of this state and the DOC.[4]

## II.

Our recent opinion in *Meredith v. Zavaras*, 954 P.2d 597 (Colo.1998), along with our prior decision in *Bullard v. Department of Corrections*, 949 P.2d 999 (Colo.1997), are dispositive of the issues presented by this case. Our analysis of the case at bar, therefore, follows the reasoning employed in *Meredith* and *Bullard*.

■ Respondent argues that *Meredith* is distinguishable and, thus, is not controlling for purposes of this case. As support for this argument, the DOC contends that the district court order at issue in *Meredith* was based on a factual determination that the defendant was no longer on parole at the time that he committed the second offense. Since no such finding was made by the Larimer County District Court when it assigned the presentence confinement credit to the sentence it had imposed, respondent avers that it was not obliged to obey the court's order. We disagree. Our decision in *Meredith* did not turn on the fact that the district court's order was supported by a factual finding that the first sentence had been discharged. Indeed, we made it abundantly clear that our holding proceeds from the basic principle that an unappealed order of the district court is final and binding upon the parties. *See Meredith*, 954 P.2d at 602–03. That principle guides our decision in this case as well.

### A.

■ It is well settled that "we may issue a writ of mandamus to the DOC requiring the DOC to comply with a district court order." *Meredith*, 954 P.2d at 601. Thus, we begin by considering whether Grangruth has satisfied the three-part test we apply to decide whether to grant mandamus relief. In making this assessment, we ask: 1) whether the defendant has a clear right to the relief sought; 2) whether the DOC has a clear duty to perform the act requested; and, 3) whether the defendant has any other available remedy. *See id.*

■ The parties do not contest the third prong of the test: whether Grangruth has any remedy available other than relief in the nature of a writ of mandamus. In *Meredith*, we observed that alternative remedies, such

---

4. We have twice before been asked to mediate virtually identical disputes between the DOC and our district courts. *See Meredith v. Zavaras*, 954 P.2d 597 (Colo.1998); *Bullard v. Department of Corrections*, 949 P.2d 999 (Colo.1997). Because an executive agency's refusal to comply with orders issuing from the judicial branch implicates both core separation of powers concerns and individual liberty interests, we find it neces-

sary to intercede once again. *See, e.g., State v. Board of Comm'rs of Mesa County*, 897 P.2d 788, 791 (Colo.1995) ("It is our responsibility to exercise original jurisdiction where the interests of the state at large are directly involved or where 'the liberty of its citizens [is] menaced.' ") (quoting *Wheeler v. Northern Colo. Irrigation Co.*, 9 Colo. 248, 253, 11 P. 103, 105 (1886)) (alteration in original).

as habeas corpus, petitions pursuant to Crim. P. 35(c) and declaratory relief pursuant to C.R.C.P. 57, were inadequate given "the temporal reality of [that] case." *Id.* Grangruth's projected date of mandatory release is currently December 23, 1999. This projection, however, does not take into account the 200 days of presentence confinement credit awarded by the Larimer County District Court. Had the DOC applied the presentence confinement credit as ordered, petitioner would now be eligible for release. Grangruth has pursued a host of alternative remedies in the district court, including motions to compel and a Crim. P. 35(c) petition. All the orders that have issued from the Larimer County District Court have been ignored by the DOC. In short, this is not a case in which petitioner has been too hasty in urging us to exercise our original jurisdiction. *See Margolis v. District Court,* 638 P.2d 297, 300–01 (Colo.1981). On the contrary, it is quite clear that the "temporal reality" of this case makes mandamus relief both appropriate and necessary.

The first two parts of our test are contested. The DOC argues that Grangruth does not have a right to escape section 16–11–306's provisions regarding the allocation of presentence confinement credits, nor does the DOC have a duty to enable him to do so. The DOC contends that the grant of presentence confinement credit is at odds with the plain meaning of section 16–11–306. The DOC further maintains that the court's allegedly erroneous application of the statute raises a question as to whether the court exceeded its jurisdiction. To the extent that the

DOC urges us to consider whether the court correctly applied section 16–11–306, we decline. Our current inquiry concerns a final order which was not opposed and from which no appeal was taken.

■ In determining whether Grangruth has a clear right to have a portion of his second sentence to imprisonment offset by the application of the presentence confinement credit and, moreover, whether the DOC has a clear duty to afford him that relief, we do not concern ourselves with whether or not the Larimer Court's order is based on a sound construction of section 16–11–306. As we first made clear in *Bullard,* complaints regarding the substance of an unappealed order of the district court are not properly postured for review in this court on petition for a writ of mandamus. *See* 949 P.2d at 1002 (refusing to review the district court's reliance on *People v. Sandoval,* 809 P.2d 1058 (Colo.App.1990) in granting defendant's motion to correct sentence).[5] We applied this principle again in *Meredith,* where the DOC asked us to reach the merits and decide whether the sentencing court's order was inconsistent with this same statute. *See* 954 P.2d at 602 n. 6 (declining to reach the issue as to the proper interpretation of section 16–11–306). This principle expresses the limitations that inhere in mandamus proceedings. *See, e.g., Lindsey v. Carlton,* 44 Colo. 42, 48, 96 P. 997, 999 (1908) ("It is also elementary that the writ [of mandamus] cannot usurp the functions of a writ of error, or take the place of an appeal ...").[6] Thus, having failed to

---

5. As we noted just this Term in *Craig v. People,* 986 P.2d 951, 960 n. 5 (Colo.1999), our practice of limiting the scope of our review of unappealed court orders brought before us on petition for a writ of mandamus derives from basic jurisdictional concerns. Discussing our earlier decision in *Bullard,* we said:

> The matter was before us on a writ of mandamus because the Department of Corrections refused to follow the judgment of the postconviction court. Thus, we were without jurisdiction to review the postconviction court's actions. As our pronouncement today makes clear, if we had enjoyed jurisdiction to review the order in *Bullard,* we would have overruled *Sandoval* and reversed the trial court.

*Craig,* 986 P.2d at 960 n. 5 (internal citations omitted). The preceding makes clear that we generally will avoid deciding substantive issues

brought to us in this posture, regardless of their merit.

6. The limited scope of mandamus proceedings is widely acknowledged as a necessary feature of this extraordinary writ. *See Petition of Thomas Dean,* 142 N.H. 889, 711 A.2d 257, 259 (1998) ("Neither a petition for a writ of prohibition nor a petition for a writ of mandamus is the proper vehicle for lodging [substantive] challenges."); *Ohio ex rel. Levin v. City of Sheffield Lake,* 70 Ohio St.3d 104, 637 N.E.2d 319, 324 (1994) ("[T]he principle is well settled that appeal, not mandamus or prohibition, is the remedy for correction of errors ... 'Extraordinary remedies, i.e. mandamus [and] prohibition, ... may not be employed ... as a substitute for an appeal for the purpose of reviewing mere errors[.]' ") (citations omitted); *Charleston County Sch. Dist. v. Charles-*

appeal from the order that the State claims to be erroneous, it cannot now argue that the order is wrong. *See Meredith,* 954 P.2d at 602–03.

Respondent also contends that the sentencing court exceeded its jurisdiction when it ordered application of the presentence confinement credit to the sentence it had imposed. The State previously raised this argument in *Meredith* and this court rejected it. *See* 954 P.2d at 602. We see no reason to depart from our prior pronouncements in *Meredith.*

Here, the district court's jurisdiction has not been challenged on the grounds that it has modified a sentence imposed by another district court. *See id.* Rather, the DOC challenges the jurisdiction of the sentencing court to determine the length of a sentence. We reject the notion that a district court acts outside the scope of its jurisdiction when it follows its understanding of the law and imposes a criminal sentence. *See id.* at 603 (citing cases). Because the power to decide the law and to impose sentences is necessarily a judicial function, it follows that "[a] trial court must be able to enforce its final orders regarding the sentence the trial court renders, for without that power, 'the role of the courts as a separate and independent branch of government would be meaningless.'" *Id.* (quoting *Bullard,* 949 P.2d at 1002). Thus, the sentencing court did not exceed its jurisdiction when it ordered the DOC to apply the presentence confinement credit to the sentence it imposed.

We hold that Grangruth has satisfied both of the remaining prongs of our test. The unappealed order of the sentencing court creates both a clear right to relief and a duty to comply. Absent any apparent jurisdictional defects that would call into question the validity of the order, *see Bullard,* 949 P.2d at 1002–03, we conclude that the order entered on May 24, 1999 by that court is valid and " 'must be implemented by the

ton County Election Comm'n, 336 S.C. 174, 519 S.E.2d 567, 572 (1999)(" '[The writ's] principal function is to command and execute, and not to inquire and adjudicate.' ") (citation omitted); *see*

DOC.' " *Meredith,* 954 P.2d at 602 (quoting *Bullard,* 949 P.2d at 1001).

### III.

Accordingly, we make the rule absolute. We direct the DOC to comply immediately with the Larimer County District Court's order of May 24, 1999, which required the DOC to apply 200 days of presentence confinement credit to Grangruth's second sentence.

*also* Note, *Supervisory and Advisory Mandamus Under the All Writs Act,* 86 Harv. L. Rev. 595, 598–602 (1973) (discussing the development of mandamus under federal law).