In re the PEOPLE of the State
of Colorado, Plaintiff,

v.

Felicio OSTUNI, Defendant.

No. 02SA157.

Supreme Court of Colorado,
En Banc.

Nov. 25, 2002.

Ken Salazar, Attorney General, Joseph P. Sanchez, Assistant Attorney General, Litigation Section, Denver, Colorado, Attorney for Plaintiff.

Felicio Ostuni, Sterling, Colorado, Pro Se Defendant.

Justice COATS delivered the Opinion of the Court.

Felicio Ostuni petitioned this court pursuant to C.A.R. 21 for relief in the nature of mandamus, directed to the Colorado Department of Corrections. More particularly, he seeks an order compelling the department to calculate his combined sentences by granting him 420 days of presentence confinement credit against his new sentences rather than against a previous sentence being served as the result of parole revocation. We issued a rule to show cause why the department should not be considered in violation of the district court's sentencing order and why it should not be ordered to comply. Because we hold that the department is not in violation of the court's order concerning the prisoner's presentence confinement credit, we discharge the rule.

## I.

Following his 1994 conviction for assault in the second degree, Felicio Ostuni was sentenced to the custody of the Colorado Department of Corrections for ten years. In early 1998, he was granted parole until his statutory discharge date of October 29, 2002.[1] While on parole, Ostuni committed forgery and aggravated motor vehicle theft. He pleaded guilty to these charges, and the Denver District Court sentenced him to the custody of the department of corrections for six years on each count, plus a period of mandatory parole. The district court calculated that the defendant should be awarded 420 days credit for time served before sentencing and noted that amount on the mittimus remanding him to the custody of the department.[2] The mittimus also indicated that both sentences were to run concurrently with each other and with Ostuni's parole violation. Following sentencing, the parole board revoked Ostuni's parole, ordering the revocation to be considered effective as of his hold date of May 11, 2000, and further ordered him returned to the custody of the department of corrections to serve the remainder of his earlier sentence.

Relying on section 16–11–306, 6 C.R.S. (2001),[3] and the parole board's revocation order, the department credited 420 days of presentence confinement against the sentence Ostuni was returned to serve following his parole revocation. Ostuni complained to the Denver District Court, asserting that his presentence confinement should have been credited against his new sentences for forgery and motor vehicle theft. The court treated Ostuni's letter as a motion for presentence confinement credit, and because Ostuni's appeal of his conviction and sentences were pending in the court of appeals, it denied the motion for lack of jurisdiction. Ostuni then filed a petition for writ of habeas corpus in the judicial district where he was incarcerated. That court similarly denied his petition for lack of subject matter jurisdiction and found that even if it were to enter a favorable ruling concerning the presentence confinement credit, habeas relief would not be appropriate at that time because the defendant would still not be eligible for immediate release.

The defendant now seeks relief from this court pursuant to C.A.R. 21.

---

1. Ostuni was apparently paroled pursuant to provisions for offenses committed before the July 1, 1993 effective date of the mandatory parole provisions of § 18–1–105(1)(a)(V), 6 C.R.S. (2001) (now § 18–1.3–401(1)(a)(V), 6 C.R.S. (2002)).

2. The court's sentencing order appeared on the mittimus in chart or matrix format, with "6.00 YEARS" appearing in a column to the right of the category "DEPARTMENT OF CORREC-

TIONS" and "420.00 DAYS" appearing in a column to the right of the category "CREDIT FOR TIME SERVED," with respect to each count.

3. Effective October 1, 2002, section 16–11–306 was renumbered § 18–1.3–405, 6 C.R.S. (2002), as part of a broader reorganization of sentencing provisions. The section remains substantively the same.

## II.

■ Relief pursuant to C.A.R. 21 is extraordinary in nature and is a matter wholly within the discretion of the supreme court. C.A.R. 21(a)(1); *In re: People v. Lee,* 18 P.3d 192, 195 (Colo.2001); *People v. District Court,* 869 P.2d 1281, 1285 (Colo.1994). Under some circumstances, it may be used to compel performance by public officials of a plain legal duty devolving upon them by virtue of their office. *State v. Board of County Comm'rs of Mesa County,* 897 P.2d 788, 791 (Colo.1995). Particularly, we have found C.A.R. 21 an appropriate vehicle to compel compliance by the department of corrections with final court sentencing orders, where prisoners lack any other adequate remedy. *See Bullard v. Department of Corrections,* 949 P.2d 999 (Colo.1997) (ordering department pursuant to C.A.R. 21 to comply with district court's unappealed order finding completion of sentence without service of mandatory parole term); *see also People v. Grangruth,* 990 P.2d 697 (Colo.1999) (ordering department pursuant to C.A.R. 21 to comply with sentencing order directing it to apply presentence confinement credit to particular sentence, where sentencing order was not appealed and temporal realities of case made other remedies unavailable); *Fields v. Suthers,* 984 P.2d 1167 (Colo.1999) (ordering department pursuant to C.A.R. 21 to comply with mittimus requiring presentence confinement credit for life sentence); *Meredith v. Zavaras,* 954 P.2d 597 (Colo.1998) (ordering department pursuant to C.A.R. 21 to comply with sentencing order directing it to apply presentence confinement credit to particular sentence because other sentence was discharged, where sentencing order was not appealed and temporal realities of case made other remedies unavailable).

Our prior holdings have made clear beyond all question that prison officials have an obligation to enforce court orders mandating the deduction of a period of presentence confinement from a particular criminal sentence unless those officials have been relieved of their obligation by further judicial action. *Grangruth,* 990 P.2d at 701; *Meredith,* 954 P.2d at 602–03. Unlike those cases, however, in which the question of applying the credits was litigated in the district courts and expressly resolved against the department, the instant case involves the construction of the sentencing order itself.[4] While there can be no question that the department must comply with an extant sentencing order of the trial court, the question remains whether a period of presentence confinement noted on the mittimus of a defendant who is ordered by the parole board to continue serving a previous sentence during the same time period should be understood as an order to deduct that period from his new sentence, or simply as a designation of the length of time for which the defendant is entitled to credit for confinement prior to his sentencing.

The General Assembly has now made clear that a person who is confined prior to the imposition of sentence for an offense is entitled to credit for the entire period of his confinement. § 18–1.3–405, 6 C.R.S. (2002) (formerly § 16–11–306)[5]; *see also Schubert v. People,* 698 P.2d 788, 792–93 (Colo.1985). It has also imposed a duty on the trial court to make an explicit finding of the amount of presentence confinement credit to which the offender is entitled and to include that find-

---

4. Although the sentencing order at issue in *Fields* was the mittimus itself, as in this case, the action of the department for which we granted relief in the nature of mandamus was its refusal to grant presentence confinement credit at all rather than its method of computing the effect of those credits on the defendant's overall sentence.

5. Section 18–1.3–405 provides:
   A person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his or her sentence for the entire period of such confinement. At the time of sentencing, the court shall make a finding of the amount of presentence confinement to which the offender is entitled and shall include such finding in the mittimus. Such period of confinement shall be deducted from the sentence by the department of corrections. If a defendant is serving a sentence or is on parole for a previous offense when he or she commits a new offense and he or she continues to serve the sentence for the previous offense while charges on the new offense are pending, the credit given for presentence confinement under this section shall be granted against the sentence the defendant is currently serving for the previous offense and shall not be granted against the sentence for the new offense.

ing in the offender's mittimus along with his sentence. Rather than permitting the court to adjust an offender's sentence downward to account for presentence confinement, the legislature has reserved to the department the duty to deduct this period of confinement from the sentence. § 18–1.3–405; *see Beecroft v. People,* 874 P.2d 1041, 1045 n. 12 (Colo.1994) ("When a defendant is sentenced to the DOC, the court does not have discretion to grant or deny confinement credit; the sentencing court must simply note if the defendant is entitled to confinement credit and if he is, note the amount of the credit."); *see also Meredith,* 954 P.2d at 605–06 (Kourlis, J., concurring) ( "[T]he sole judicial function in connection with presentence confinement credit against a DOC sentence is to include on the mittimus the number of PCC days to which the defendant is entitled. . . . The DOC then has the statutory duty to credit the defendant with those PCC days.") (citation omitted); *People v. Dempsey,* 624 P.2d 374, 375 (Colo.App.1981) ( "[T]he only judicial function [under section 18–1.3–405] is to make a finding of fact concerning the number of days spent by a defendant in presentence confinement.").

■ This reservation to the department is immediately followed in the statute's text by specific instructions for allocating any presentence confinement credit required by this section when the offender was serving a sentence or was on parole for a previous offense at the time he committed the new offense. In that event, the statute requires the credit to be granted against any sentence that the offender continued to serve for his previous offense and not against the sentence for his new offense. *See People v. Johnson,* 797 P.2d 1296, 1298 n. 4 (Colo.1990) (noting the addition of this provision in 1988 to prohibit duplicative crediting where offender was serving a sentence on parole at time of subsequent crime). While the responsibility for allocating presentence confinement credit among new and previous offenses is not expressly assigned to the department, as is its duty from the previous sentence to deduct presentence confinement credit generally, this is the clear inference to be drawn from both the nature and location of the specific limitation.

■ Section 18–1.3–405 requires credit only for offenses that are sufficiently the cause of presentence confinement, *Schubert,* 698 P.2d at 793, and this determination is clearly a matter for the sentencing court. Even before the 1988 inclusion of a special statutory parole provision, however, this court held that once a defendant's parole had been revoked and resumption of the service of his previous sentence had begun, his confinement could no longer be considered causally related to the charge or conduct for which he would receive a new sentence. *Torand v. People,* 698 P.2d 797, 800–01 (Colo. 1985). Unlike presentence confinement for a particular offense, whether and when a defendant's parole for a previous offense will be revoked and service of his previous sentence will resume is a matter determined by executive branch officers. While courts must decide (when the matter is properly before them) whether the department has correctly interpreted and applied controlling statutes and sentencing orders,[6] the initial allocation of responsibilities in section 18–1.3–405 merely reflects the practical difficulty of avoiding duplicative credit for actions taken independently by executive and judicial branch officers.

■■ In light of this statutory allocation of responsibilities, an annotation indicating credit for time served, on a mittimus that expressly requires service of the defendant's new sentences concurrently with his parole violation, cannot reasonably be understood as anything more than a factual finding of the period of time the defendant spent in confinement prior to sentencing. It in no way suggests a judicial determination that this period of time should be deducted from the defendant's new sentences rather than from the remainder of his previous sentence, much less any awareness of the difference such a

---

**6.** However, we have previously noted the importance of deferring to the department's interpretation of its responsibility to administer the various time-reducing credits defined by the General As-

sembly, as long as its interpretation is reasonable and contravenes no legislative or constitutional rights or policies. *See Price v. Mills,* 728 P.2d 715, 719 (Colo.1986).

determination would make to the defendant's overall circumstances. While it is clearly the duty of the department to enforce judicial orders unless or until it has been relieved of that responsibility by further judicial action, an annotation of "credit for time served" on such a mittimus must be construed as an order for a specific amount of credit to which the defendant is entitled by statute, but not a specific method for applying that credit to the defendant's entire sentence or for calculating the defendant's ultimate parole eligibility or mandatory release dates. Whether or not the department has correctly interpreted the statutory scheme prescribing the computation of multiple sentences and the accreditation of presentence confinement under the circumstances of Ostuni's case, its computation of his sentence is not in violation of a clear duty to obey the court's sentencing order.

### III.

Because the petitioner has failed to demonstrate that the department is acting in violation of an order of the district court to give him credit for time served, the rule is discharged.

Justice MARTINEZ dissents, and Justice HOBBS and Justice BENDER join in the dissent.

Justice MARTINEZ dissenting:

The Majority's interpretation of the trial court's mittimus detailing Ostuni's presentence confinement credit is contrary to the clear language of the mittimus. Common sense requires that we review the language of the mittimus before resorting to any construction. Because the mittimus clearly allocated presentence confinement credit to Ostuni's two new offenses, I conclude that the DOC violated the trial court's order. Accordingly, I respectfully dissent.

### I. The Mittimus Awards Credits to the New Offenses

While Ostuni was serving a period of discretionary parole on a conviction for assault in the second degree, he committed and was later convicted of forgery and aggravated motor vehicle theft. Upon these convictions, the trial court sentenced him to two concurrent six-year terms of imprisonment, to be served concurrently with his parole violation on the assault conviction.

Between arrest and sentencing, Ostuni spent 420 days in confinement. On the mittimus, the trial court specifically granted credit for time served of 420 days on the forgery count and separately granted credit for time served of 420 days on the aggravated motor vehicle theft count. After the Colorado Department of Corrections (DOC) refused to comply with the trial court's order awarding 420 days of presentence confinement credit, Ostuni asked the trial court for an order to compel. In an order determining that it no longer had jurisdiction, the trial court reiterated that it had awarded "420 days presentence confinement credit *for each count.*" (emphasis added).

The court clearly had the opportunity to note on the mittimus that any credit for time served was to be awarded only on the parole violation, but it did not. Similarly, the court did not state that it was merely finding that Ostuni had been confined for 420 days before sentencing; rather, it granted credit on the new counts. The mittimus and the court's later order indisputably show that the presentence confinement credit was granted to the new sentences and not the old conviction.

### II. The Majority's Interpretation Ignores the Mittimus

I believe that the Majority ignores the clear direction in the trial court's order and misconstrues the mittimus. The Majority's interpretation relies solely on its finding of implicit authority delegated to the DOC, within section 18–1.3–405, 6 C.R.S. (2002), to determine to which sentence a trial court's finding of presentence confinement credit applies. Maj. Op. at 534. Its reasoning implies, that however clear the mittimus, it could not have meant what it plainly stated.

I leave for another case the discussion on the presence or absence of authority implicitly delegated to the DOC to allocate presentence confinement credit between new and old offenses. Instead, this dissent rests on

the belief that the Majority is simply recasting the same argument that we have previously considered and rejected in *People v. Grangruth*, 990 P.2d 697 (Colo.1999); *Meredith v. Zavaras*, 954 P.2d 597 (Colo.1998); and *Bullard v. Department of Corrections*, 949 P.2d 999 (Colo.1997). These cases have in common the issue of whether the DOC can disregard a trial court's order that it believes is contrary to legislation. In our prior cases, we made it clear that the DOC must enforce sentencing orders directing it to apply time credits absent further judicial action. Maj. Op. at 533–534.

In *Bullard*, the defendant sought a writ of mandamus against the DOC for its failure to discharge him from custody contrary to the trial court's order. 949 P.2d at 1000–01. The sentencing court found that Bullard had served his two-year stipulated sentence and should be discharged from DOC custody. *Id.* at 1000. Despite the order of the trial court, the DOC refused to discharge Bullard, arguing that the order was void. *Id.* We did not reach the propriety of the district court's application of law to Bullard's case. *Id.* at 1002. Instead, we found that since the trial court's order was final, the DOC must comply with it absent further judicial action. *Id.*

In *Meredith*, the DOC failed to comply with the trial court's order to apply presentence confinement credit to defendant's new offenses. 954 P.2d 597. The DOC argued that the precursor to section 18–1.3–405, section 16–11–306, precluded the trial court from applying the presentence confinement credit to the new sentence. *Id.* at 599–600. After many attempts to compel the DOC to comply with the trial court's order, the defendant sought a writ of mandamus against the DOC. *Id.* at 601. Consistent with our holding in *Bullard*, we found that the DOC could not elect to ignore the trial court's order when it had not been relieved of that obligation by further judicial action. *Id.* at 602.

Finally, in *Grangruth*, we repeated our admonition to the DOC. 990 P.2d 697. In *Grangruth*, the DOC proceeded to transfer the presentence confinement credit to the previous sentence upon which the defendant had violated parole, consistent with the pre-cursor to section 18–1.3–405, section 16–11–306, and contrary to the trial court's mittimus order. *Id.* at 698. Defendant requested an order from the trial court to compel the DOC to apply the presentence confinement credit consistent with the mittimus. *Id.* The trial court ordered that the presentence confinement credit apply to the latter, newer conviction, but the DOC made no effort to comply. *Id.* at 698–99. When Grangruth requested a writ of mandamus, the DOC argued that the trial court's grant of credit was contrary to the plain meaning of section 18–1.3–405. *Id.* at 700. We refused to address that issue because the DOC had not relieved its obligation to comply with the trial court's order. *Id.* at 701.

We have made it abundantly clear that the DOC may not disregard a final order with impunity. Once again, the DOC has refused to acknowledge the clear mandate of the trial court. To circumvent *Bullard* and its progeny, the Majority reasons that since the trial court did not have authority to allocate presentence confinement credit, any findings of fact within the mittimus must necessarily be consistent with the absence of that authority. The Majority ignores the trial court's clear language in the mittimus. The Majority finds that, notwithstanding the clarity of the mittimus, the interpretation of the mittimus must be first guided by looking outside the mittimus, thus nullifying the final sentencing order of the trial court. While I cannot dispute that the trial court's grant of presentence confinement credit is contrary to section 18–1.3–405, the proper course to resolve any possible discrepancy is not through a faulty interpretation of the trial court's order. Therefore, I respectfully dissent.

I am authorized to say that Justice HOBBS and Justice BENDER join in this dissent.