The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
January 30, 2020

## 2020COA18

### No. 19CA0091, *Harvey v. Centura* — Creditors and Debtors — Hospital Liens — Lien for Hospital Care

In this hospital lien case, a division of the court of appeals

concludes that section 38-27-101(1), C.R.S. 2019, of the hospital

lien statute does not require a hospital to bill Medicare and

Medicaid for medical services before creating a lien against the

person who received the services, when that person is covered by

other insurance.

COLORADO COURT OF APPEALS                          **2020COA18**

Court of Appeals No. 19CA0091
Arapahoe County District Court No. 18CV32030
Honorable Elizabeth Beebe Volz, Judge

Peggy Harvey,

Plaintiff-Appellant,

v.

Centura Health Corporation and Catholic Health Initiatives, d/b/a Centura
Health Saint Anthony Hospital,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE WEBB
Terry and Tow, JJ., concur

Announced January 30, 2020

Franklin D. Azar & Associates, P.C., Robert E. Markel, Aurora, Colorado, for
Plaintiff-Appellant

McConnell Van Pelt, LLC, Traci L. Van Pelt, David A. Belsheim, Denver,
Colorado, for Defendants-Appellees

¶ 1     Does section 38-27-101(1), C.R.S. 2019, of the hospital lien statute require a hospital to bill Medicare and Medicaid for medical services before creating a lien against the person who received the services, when that person is covered by other insurance?  We answer this novel question "no."  For that reason, we do not reach the question whether federal law preempts the statute.  Therefore, we affirm the summary judgment entered in favor of defendants, Centura Health Corporation and Catholic Health Initiatives (collectively, Centura), and against plaintiff, Peggy Harvey.

## I.  Background

¶ 2     In the trial court, the following facts were undisputed.

¶ 3     Ms. Harvey suffered injuries when a truck driven by an employee of Gibbons Erectors, Inc., rear-ended her vehicle.  On April 2, 2018, a few days after the accident, Centura provided medical services to her.  At the time of the accident and when she received treatment, Ms. Harvey was a Medicare beneficiary and a Medicaid recipient.  She presented Centura with proof of her eligibility for these benefits.

¶ 4 Centura billed her $15,611.39 for its services. Centura also sent the bill to Gibbons. After not receiving payment, Centura assigned the bill to Avectus Health Care Solutions for collection.

¶ 5 Geico Insurance Company insured Ms. Harvey. The coverage included medical expenses. Travelers Insurance Company insured Gibbons. When contacted by Avectus on May 9, Ms. Harvey provided her Geico policy number and her claim number with Travelers.

¶ 6 Avectus contacted both Geico and Travelers. On May 15, Avectus resubmitted the bill to Gibbons. Two days later, Avectus submitted the bill to Geico. Then on May 25, Avectus filed a hospital lien on Centura's behalf and against Ms. Harvey in the billed amount.

¶ 7 Neither Centura nor Avectus ever billed Medicare or Medicaid. On June 12, Geico told Avectus that it was withholding payment of the Centura bill pending an agreement with Ms. Harvey's attorney concerning allocation of settlement proceeds. The bill remained unpaid.

¶ 8 Ms. Harvey brought this action alleging that by filing the lien before billing Medicare and Medicaid, Centura violated section

38-27-101(1). Under section 38-27-101(7), she sought damages of twice the amount of the lien. Centura moved to dismiss. The trial court treated the motion as one for summary judgment and granted it. Ms. Harvey does not challenge the ruling based on any disputed issue of material fact.

## II. Standard of Review

¶ 9      Summary judgment is reviewed de novo, applying the same standard as the trial court. *Blakesley v. BNSF Ry. Co.*, 2019 COA 119, ¶ 11. It is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c).

¶ 10     Statutory interpretation is a question of law that is also reviewed de novo. *Ryser v. Shelter Mut. Ins. Co.*, 2019 COA 88, ¶ 11. That review is guided by several familiar principles, including the following.

- A court's principal task when construing a statute is to give effect to the General Assembly's intent, as determined primarily from the plain language of the statute. *Roberts v. Bruce*, 2018 CO 58, ¶ 8.

- The court construes the statute as a whole in an effort to give consistent, harmonious, and sensible effect to all its parts, reading words and phrases in context and according to the rules of grammar and common usage. *Id.*

- If the statutory language is clear and unambiguous, the court does not engage in further statutory analysis, much less consider extrinsic information. *City & Cty. of Denver v. Dennis*, 2018 CO 37, ¶ 12.

- When interpreting a statute, we must "give effect to every word and render none superfluous." *Baum v. Indus. Claim Appeals Office*, 2019 COA 94, ¶ 35 (quoting *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008)).

### III.  Law

¶ 11    Section 38-27-101(1) authorizes a hospital to create a lien for services and care provided to persons "injured as the result of the negligence or other wrongful acts of another person."  Such a lien — which is second in priority only to an attorney's lien — is intended "to protect hospitals that provide medical services to an injured person who may not be able to pay but who may later receive compensation for such injuries which includes the cost of the

medical services provided." *Rose Med. Ctr. v. State Farm Mut. Auto. Ins. Co.*, 903 P.2d 15, 16 (Colo. App. 1994) (citing Carol A. Crocca, Annotation, *Construction, Operation, and Effect of Statute Giving Hospital Lien Against Recovery from Tortfeasor Causing Patient's Injuries*, 16 A.L.R.5th 262 (1993)); *see also Trevino v. HHL Fin. Servs., Inc.*, 945 P.2d 1345, 1350 (Colo. 1997) ("The legislature clearly intended to offer hospitals additional protection for medical services debts by enacting the hospital lien statute.").

¶ 12    Allowing hospitals to create liens for services and care "furthers the important policy of reducing the amount of litigation that would otherwise be necessary to secure repayment of the health care debts." *Wainscott v. Centura Health Corp.*, 2014 COA 105, ¶ 30 (quoting *Cmty. Hosp. v. Carlisle*, 648 N.E.2d 363, 365 (Ind. Ct. App. 1995)).  As well, such liens "benefit the public by encouraging hospitals to treat patients without first determining their ability to pay." *Id.* at ¶ 31.

¶ 13    In 2015, the General Assembly "significantly amended" section 38-27-101 to impose, for the first time, requirements that must be satisfied before a lien can be created.  *Marchant v. Boulder Cmty.*

*Health, Inc.*, 2018 COA 126M, ¶ 7; *see* Ch. 260, sec. 1, § 38-27-101, 2015 Colo. Sess. Laws 981-83.  Section 38-27-101(1) now provides:

> Before a lien is created, every hospital . . . which furnishes services to any person injured as the result of the negligence or other wrongful acts of another person . . . shall submit all reasonable and necessary charges for hospital care or other services for payment *to the property and casualty insurer and the primary medical payer of benefits* available to and identified by or on behalf of the injured person, in the same manner as used by the hospital for patients who are not injured as the result of the negligence or wrongful acts of another person, *to the extent permitted by state and federal law.*

(Emphasis added.)

### IV.  Centura Complied With Section 38-27-101(1)

¶ 14    Ms. Harvey contends Centura violated section 38-27-101(1) by creating a lien for the cost of her medical care without first billing Medicare and Medicaid.  Centura concedes preservation.  We discern no violation.

¶ 15    Section 38-27-101(1) requires a hospital — before creating a lien — to submit reasonable and necessary charges for hospital care to the property and casualty insurer and the *primary* medical payer of benefits available to and identified by the injured person.

Although the parties disagree as to when (if ever) Medicare and Medicaid become a "primary medical payer of benefits," mere disagreement about the application of statutory language does not create an ambiguity. *Morley v. United Servs. Auto. Ass'n*, 2019 COA 169, ¶ 16. Indeed, at oral argument, both Centura and Ms. Harvey agreed that the statute is unambiguous.

¶ 16 While section 38-27-101 leaves "primary" payer of benefits undefined, it does define "payer of benefits" generally. *See* § 38-27-101(9). This definition includes an insurer, a health maintenance organization, a health benefit plan, a preferred provider organization, an employee benefit plan, a program of medical assistance under the "Colorado Medical Assistance Act," "[a]ny other insurance policy or plan," or "[a]ny other benefit available as a result of a contract entered into and paid for by or on behalf of an injured person." *Id.* Everyone before us agrees that this definition includes Medicare and Medicaid.

¶ 17 Still, had the General Assembly intended for section 38-27-101(1) to include *all* payers of benefits, it would not have used the limiting word "primary." *See Sooper Credit Union v. Sholar Grp. Architects, P.C.*, 113 P.3d 768, 772 (Colo. 2005) ("Had the

General Assembly intended to limit [the statute's application], it would have said so. Accordingly, we will not read in such a requirement that the General Assembly plainly chose not to include."). Because the General Assembly included this word, we must assume that it did so intentionally. *Lombard*, 187 P.3d at 571 (We "do not presume that the legislature used language idly and with no intent that meaning should be given to its language." (quoting *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo. 2005))).

¶ 18    Under section 38-27-101(1), a hospital must submit charges to the primary payer of medical benefits "to the extent permitted by state and federal law." So, to give effect to the word "primary" in section 38-27-101(1), we examine its use under state and federal law. As discussed below, doing so gives the phrase "primary payer" a particular meaning in the context of Medicare and Medicaid benefits that defeats Ms. Harvey's claim.

## A. Medicare

¶ 19    When the Medicare Program was enacted, it "served as the primary payer for all services to Medicare beneficiaries." *Smith v. Farmers Ins. Exch.*, 9 P.3d 335, 338 (Colo. 2000). But this changed

in 1980, when Congress enacted the Medicare Secondary Payer (MSP) provisions, *see* 42 U.S.C. § 1395y (2018). *Smith*, 9 P.3d at 338. These provisions "require care providers to ascertain whether a Medicare beneficiary is covered by some other insurance and to bill that insurer first, only turning to Medicare if the insurance is not forthcoming." *Am. Hosp. Ass'n v. Sullivan*, CIV. A. No. 88-2027(RCL), 1990 WL 274639, at *6 (D.D.C. May 24, 1990); *see also* 42 C.F.R. § 411.32(a)(1) (2018) ("Medicare benefits are secondary to benefits payable by a primary payer . . . .").

¶ 20     So, under federal law, Medicare is a secondary payer "when another insurer is responsible for providing primary coverage." *Wainscott*, ¶ 68. Indeed, Medicare is prohibited from making payment when "payment has been made or can reasonably be expected to be made" by a group health plan, a workers' compensation plan, an automobile or liability insurance plan, or a no-fault insurance plan. *Id.* at ¶ 69 (quoting 42 U.S.C. § 1395y(b)(2)(A)). However, because federal law is silent on hospital liens, we return to Colorado law.

¶ 21     The General Assembly is "presumed to know the existing law at the time it amends or clarifies that law." *Alliance for Colorado's*

*Families v. Gilbert,* 172 P.3d 964, 968 (Colo. App. 2007). Reading section 38-27-101(1) in the context of the MSP provisions, we conclude that the phrase "primary payer" did not require Centura to submit charges to Medicare because — given the existence of other insurance in this case — Medicare is considered a secondary payer under 42 U.S.C. § 1395y(b)(2). This is so even though Ms. Harvey showed Centura that she was covered by Medicare and Medicaid.

¶ 22 Despite this clear statutory language, Ms. Harvey argues that Centura was required to submit its charges to Medicare before creating a lien based on the conditional payment provisions of the MSP provisions. Those provisions allow Medicare to make a conditional payment for medical expenses if the primary payer "has not made or cannot reasonably be expected to make payment with respect to such item or service promptly." 42 U.S.C. § 1395y(b)(2)(B)(i) (referred to as the "promptly period").[1]

---

[1] The payments are "conditional" because "upon judgment or settlement, the primary insurer and anyone who receives payment from it must reimburse Medicare for any conditional payments made." *Wainscott v. Centura Health Corp.,* 2014 COA 105, ¶ 70 (first citing 42 U.S.C. § 1395y(b)(2)(B)(ii) (2018); then citing 42 C.F.R. §§ 411.22, 411.52(b) (2013)).

¶ 23    According to Ms. Harvey, to comply with section 38-27-101(1), "Centura could not record a hospital lien without determining if prompt payment would be made by non-Medicare sources and if not, billing Medicare as the primary payer of benefits." True, Centura *could* bill Medicare on the earlier of determining that payment was not reasonably expected or lapse of 120 days after the services had been provided. But for two reasons, we disagree with Ms. Harvey's conclusion that this provision *required* Centura to bill Medicare before creating the lien.

¶ 24    First, Ms. Harvey's argument assumes that Medicare has become a primary payer. Yet, under the MSP provisions Medicare continues to be a secondary payer even when prompt payment is not reasonably expected nor made within 120 days. At most, under the MSP provisions, "[a]fter the promptly period, Medicare *may* make conditional payment." *Wainscott*, ¶ 70 (emphasis added) (citing 42 U.S.C. § 1395y(b)(2)(B)(ii)); *see A.S. v. People*, 2013 CO 63, ¶ 21 ("[U]se of the term 'may' is generally indicative of a grant of discretion or choice among alternatives.").

¶ 25    Second, Ms. Harvey's argument would defeat the purpose of these statutory schemes. Under her interpretation of section

11

38-27-101(1), if Centura were required to bill Medicare before creating a lien, and when Medicare was not a primary payer, then Medicare would become its only option for reimbursement. Specifically, the *Medicare Secondary Payer Manual* explains that after the promptly period or if liability insurance will not pay during the promptly period, "a provider, physician, or other supplier" has two choices: either "bill Medicare for payment and withdraw all claims/liens against the liability insurance/beneficiary's liability insurance settlement" or "maintain all claims/liens against the liability insurance/beneficiary's liability insurance settlement." U.S. Dep't of Health & Human Servs., Ctrs. for Medicare & Medicaid Servs., *Medicare Secondary Payer (MSP) Manual*, ch. 2, § 40.2B (2016) (*MSP Manual*).

¶ 26   Requiring Centura to bill Medicare before creating a lien — when Medicare is still considered a secondary payer — erodes the purpose of the hospital lien statute to protect hospitals "against financial losses resulting from personal injury cases." *Wainscott*, ¶ 33. If a provider bills Medicare, "the provider must accept the Medicare approved amount as payment in full . . . ." *MSP Manual*, ch. 2, § 40.2D. Yet, "if the provider pursues liability insurance, the

provider may charge beneficiaries actual charges, up to the amount of the proceeds of the liability insurance . . . ." *Id.*

¶ 27　Given all this, we disagree with Ms. Harvey that Medicare constituted a primary payer under section 38-27-101(1) who must have been billed before Avectus filed the lien.[2]

## B.　Medicaid

¶ 28　We also reject Ms. Harvey's argument that Centura was required to bill Medicaid as a primary payer before creating a lien under section 38-27-101(1).

¶ 29　Section 25.5-4-300.4, C.R.S. 2019, of the Colorado Medical Assistance Act, provides:

> It is the intent of the general assembly that medicaid be the *last resort for payment* for medically necessary goods and services furnished to recipients and that *all other sources of payment are primary to medical assistance provided by medicaid.*

(Emphasis added.)

---

[2] This case does not require us to decide when — if ever — Medicare might become a primary payer that a provider must bill, before filing a lien, if the provider has not already done so because Medicare was clearly a secondary payer.

13

¶ 30    Again, Ms. Harvey argues that Medicaid is included in the definition of payer of benefits under section 38-27-101(9). But, as explained above, section 38-27-101(1) refers to the "primary payer" of benefits. So, we conclude that in instances where an injured person has other sources for the payment of benefits, Medicaid is a payer of last resort and not a primary payer. Therefore, Centura was not required to bill Medicaid before creating a lien.

## V.  Attorney Fees

¶ 31    Centura requests "all reasonable legal expenses necessary for the collection of . . . [Ms.] Harvey's debt, including attorney[] fees," based on a contract that is not in the record. Because this request was not raised with the trial court, and in any event the record does not include the contract that purportedly shifts fees, we decline to address it. *See State Farm Fire & Cas. Co. v. Weiss*, 194 P.3d 1063, 1069 (Colo. App. 2008) (request for attorney fees not raised before the trial court may not be raised for the first time on appeal).

## VI.  Conclusion

¶ 32    The judgment is affirmed.

JUDGE TERRY and JUDGE TOW concur.

14