The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 5, 2020

**2020COA38**

**No. 18CA1646, *Garcia v. Centura Health Corporation* —
Creditors and Debtors — Hospital Liens — Lien for Hospital
Care**

A division of the court of appeals considers whether the

Colorado hospital lien statute permits a lien against a patient when

Medicare is a wrongfully injured patient's primary health insurance,

and the hospital has not billed Medicare.  *See* § 38-27-101, C.R.S.

2019.  The division concludes that (1) the statute requires a

hospital to bill Medicare before filing a lien; (2) the legislative history

supports this interpretation; and (3) this interpretation does not

conflict with federal law.

This decision is contrary to a recent decision by another

division of the court of appeals.  *See Harvey v. Centura Health Corp.

& Catholic Health Initiatives*, 2020 COA 18.

Court of Appeals No. 18CA1646
City and County of Denver District Court No. 17CV32645
Honorable Ross B.H. Buchanan, Judge

_____

Jina Garcia,

Plaintiff-Appellant,

v.

Centura Health Corporation,

Defendant-Appellee.

_____

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE RICHMAN
Freyre and Grove, JJ., concur

Announced March 5, 2020

_____

Sawaya, Rose, McClure & Wilhite, P.C., Robert E. Caldwell, Denver, Colorado; The Hannon Law Firm, LLC, Kevin S. Hannon, Denver, Colorado, for Plaintiff-Appellant

Hall, Render, Heath & Lyman, P.C., Melvin B. Sabey, Denver, Colorado, for Defendant-Appellee

Burg Simpson Eldredge Hersh & Jardine, P.C., Nelson Boyle, Englewood, Colorado for Amicus Curiae Colorado Trial Lawyers Association

¶ 1     Under Colorado's hospital lien statute, section 38-27-101, C.R.S. 2019, as amended in 2015, may a hospital place a lien on a person (1) who has been injured as a result of negligence or other wrongful acts and (2) whose primary health insurance is Medicare, without first billing Medicare?  We answer "no" because in amending the statute, the General Assembly sought to protect insured patients from unnecessary liens — not to protect maximum payments to hospitals serving insureds.

¶ 2     Consequently, we reverse the district court order dismissing the claim of plaintiff, Jina Garcia, that defendant, Centura Health Corporation (Centura), violated the hospital lien statute when it filed a hospital lien against her before billing her primary health insurance.  We also reverse the court's denial of Garcia's motion for summary judgment as to her individually.

## I. The Hospital Lien Statute and Medicare

### A. Prior Version of Lien Statute

¶ 3     Before 2015, the hospital lien statute provided, as relevant here, that "[e]very hospital . . . which furnishes services to any person injured as the result of the negligence or other wrongful acts of another person . . . shall . . . have a lien for all reasonable and

necessary charges for hospital care upon the net amount payable . . . as damages on account of such injuries." § 38-27-101, C.R.S. 2014. Liens were limited in that they could not be filed to seek unreasonable or unnecessary charges, or any charges incurred after a judgment or settlement, or filed against persons covered by workers' compensation; and the lien created under the statute was junior to an attorney's lien.

¶ 4 A division of this court interpreted the statute in the context of its purpose and its interaction with federal Medicare in *Wainscott v. Centura Health Corp.*, 2014 COA 105, an opinion on which the district court heavily relied. The division recognized that the intent of the statute was "to protect hospitals that provide medical services to an injured person *who may not be able to pay* but who may later receive compensation for such injuries which includes the cost of the medical services provided." *Wainscott*, ¶ 29 (emphasis added) (quoting *Rose Med. Ctr. v. State Farm Mut. Auto. Ins. Co.*, 903 P.2d 15, 16 (Colo. App. 1994)).

¶ 5 The *Wainscott* division rejected the plaintiffs' claim that the failure of the hospital to disclose to them that it would not bill Medicare constituted a violation of the Colorado Consumer

Protection Act. Affirming the district court's ruling that the hospital did not have a duty to inform them that it was going to "bill in a certain way," the division observed that under federal law, Medicare serves as a secondary payer "when another insurer is responsible for providing primary coverage." *Id.* at ¶¶ 66-68; *see* 42 U.S.C. § 1395y(b)(2) (2018). Accordingly, *Wainscott* recognized that under federal law, hospitals must bill a tortfeasor's liability insurer before billing Medicare. *Wainscott,* ¶ 71; *see* 42 C.F.R. § 489.20(g) (2019). Additionally, *Wainscott* noted that Medicare will make conditional payments to the hospital if the liability insurer "has not made or cannot reasonably be expected to make payment . . . promptly . . . ."[1] *Wainscott,* ¶ 70 (quoting 42 U.S.C. § 1395y(b)(2)(B)(i)); *see* 42 C.F.R. § 411.52(a)(1) (2019). But *Wainscott* was not interpreting the

---

[1] The Medicare payments are referred to as "conditional" because if a liability insurer is ultimately found responsible, as demonstrated by a judgment, settlement, award, payment, etc., any Medicare payments made to a hospital must be repaid to Medicare by the liability insurer or the entity that receives payment from the liability insurer. 42 U.S.C. § 1395y(b)(2)(B)(ii) (2018); 42 C.F.R. § 411.22 (2019). And "promptly" is defined as within 120 days after the earlier of (1) the date a claim is filed with a liability insurer or a hospital lien is filed or (2) the date the patient is discharged from the hospital. 42 C.F.R. § 411.50(b) (2019). This timeframe is referred to as the "promptly period." *Wainscott v. Centura Health Corp.,* 2014 COA 105, ¶ 70.

3

language now in the statute, which requires hospitals to bill the "primary medical payer of benefits" before filing a lien, § 38-27-101(1), C.R.S. 2019, nor was it juxtaposing that language against the federal description of Medicare as a "secondary payer." Thus, we do not find *Wainscott* informative on the statutory interpretation question now before us.

## B. Current Version of Lien Statute

¶ 6      Seeking to curb the use of liens against accident victims who *could pay* their hospital bills through their own insurance, the Colorado legislature substantially amended the hospital lien statute in 2015. Ch. 260, sec. 1, § 38-27-101, 2015 Colo. Sess. Laws 981-82. As amended, and as relevant here, the statute provides:

> (1) *Before a lien is created, every hospital . . .* which furnishes services to any person injured as the result of the negligence or other wrongful acts of another person . . . *shall submit all reasonable and necessary charges for hospital care* or other services for payment *to the property and casualty insurer and the primary medical payer of benefits* available to and identified by or on behalf of the injured person, in the same manner as used by the hospital for patients who are not injured as the result of the negligence or wrongful acts of another person, *to the extent permitted by state and federal law.*

(2) If no payers of benefits are identified for the injured person due to lack of insurance, a lien may be created.

. . . .

(7) An injured person who is subject to a lien in violation of this section may bring an action in a district court to recover two times the amount of the lien attempted to be asserted.

. . . .

(9) For purposes of this section, "payer of benefits" means:

[any of nine categories of insurance providers, which includes health insurance providers Medicare and Medicaid].[2]

---

[2] Section 38-27-101(9), C.R.S. 2019, defines "payers of benefits" as follows:

(a) An insurer;

(b) A health maintenance organization;

(c) A health benefit plan;

(d) A preferred provider organization;

(e) An employee benefit plan;

(f) A program of medical assistance under the "Colorado Medical Assistance Act" [Medicaid]. . . ;

(g) The children's basic health plan . . . ;

§ 38-27-101 (emphases added).

¶ 7    There is no question that, under the current version of the statute, hospitals must bill a patient's primary private health insurance provider (such as BlueCross/BlueShield) before filing a lien. But in this case and in others currently working their way through Colorado courts, Centura seeks to dodge the pre-billing requirement as it would apply to Medicare. Arguing that Medicare is not a "primary" medical payer of benefits because Medicare defines itself as a secondary payer in cases of wrongful injury, Centura seeks to recover the full amount of its hospital bills from accident victims through filing a lien, rather than the discounted amount that Medicare would pay if it were billed. We reject the notion that the General Assembly intended the 2015 amendments to create such a loophole.

## II. Factual and Procedural History

---

(h) Any other insurance policy or plan; or

(i) Any other benefit available as a result of a contract entered into and paid for by or on behalf of an injured person.

6

¶ 8    The following facts are undisputed.  Garcia was treated at Centura-St. Anthony North (the hospital) for injuries sustained in an automobile accident on April 10, 2017.  She told the hospital at the time of her treatment that Medicare, Medicaid, and Progressive (her property and casualty insurance carrier) were her insurers.  Centura's agent billed Progressive four days later and was informed that Garcia's policy did not cover medical care.[3]  Less than a month after Garcia's hospital visit, Centura filed a lien against her for $2170.35, without first billing Medicare.  On May 24, Centura notified Garcia that the charges would not be billed to Medicare or Medicaid at that time.

¶ 9    In July, exercising the right of action granted by section 38-27-101(7), Garcia filed a complaint against Centura, individually and on behalf of a class of others similarly situated, seeking, as relevant here, an award of twice the amount of the hospital lien(s) asserted.

---

[3] The parties dispute whether the hospital also billed the at-fault party's liability insurer, but we conclude that dispute is not material to our decision.

¶ 10     In September, Centura released the lien and moved to dismiss Garcia's claims.[4]  Garcia cross-moved for summary judgment.  The district court ruled in favor of Centura on both motions, finding a potential conflict between section 38-27-101 and federal law and thus narrowly interpreting the term "primary medical payer of benefits" to exclude Medicare and Medicaid.

### III. Standard of Review

¶ 11     We review de novo the district court's grant of Centura's motion to dismiss and its denial of Garcia's motion for summary judgment.  *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 71 (Colo. 2004).  We begin by interpreting the hospital lien statute, as amended in 2015, de novo.  *See Colo. Med. Bd. v. McLaughlin*, 2019 CO 93, ¶ 22.  In doing so, we first consider whether the General Assembly intended Medicare to be a "primary medical payer of benefits" as applied to Garcia under the statute, and we conclude that it did.  We then consider the consequences of that

---

[4] The record does not reveal why Centura released the lien. Centura eventually billed Medicare on October 20 — 193 days after Garcia was treated at the hospital.

interpretation, including whether requiring Centura to bill Medicare is "permitted by state and federal law." § 38-27-101(1).

## IV. Interpreting the Hospital Lien Statute

¶ 12 "Our fundamental responsibility in interpreting a statute is to give effect to the General Assembly's purpose or intent in enacting the statute." *Martin v. People*, 27 P.3d 846, 851 (Colo. 2001). To effect that intent, we look first to the statute's plain language, construing words and phrases "according to grammar and common usage" and considering the statute as a whole. *Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010).

¶ 13 If the statute lends itself to reasonable alternative constructions, "a court may apply other rules of statutory construction and look to pertinent legislative history to determine which alternative construction is in accordance with the objective sought to be achieved by the legislation." *People v. Terry*, 791 P.2d 374, 376 (Colo. 1990).

¶ 14 We presume that the General Assembly intended a just and reasonable result and that "[p]ublic interest is favored over any private interest." § 2-4-201(1)(c), (e), C.R.S. 2019.

### A. Plain Language

¶ 15     Here, based on the plain language in subsections (1) and (9) of section 38-27-101, and because the General Assembly used the conjunctive "and" in subsection (1), we conclude that the General Assembly intended to require hospitals to bill at least two insurers, when they are identified by the injured person, before filing a lien: (1) a property and casualty insurer (liability insurer) *and* (2) a patient's primary medical payer of benefits.  "Primary medical payer of benefits" is not a defined term in the statute.  However, "payer of benefits" is defined in the statute, and the descriptor "medical" narrows that list to medical or health insurers — not liability insurers.  *See* § 38-27-101(9).

¶ 16     A patient's "primary" health insurer is, according to common usage, the first or principal health insurer to be billed for medical treatments.  *See* Merriam-Webster Dictionary, https://perma.cc/R9FU-28FF (defining "primary" as "first in order of time" or "of first rank").  When a patient is insured by only Medicare and Medicaid, Medicare is the patient's primary health insurance.  *See* § 25.5-4-300.4, C.R.S. 2019 ("It is the intent of the general assembly that medicaid be the last resort for payment . . . and that all other sources of payment are primary to medical

assistance provided by medicaid.").  It is undisputed that Medicare is Garcia's primary health insurance.[5]  It follows that, under the plain language of the statute, when Medicare is the patient's primary health insurer, the General Assembly intended hospitals to bill Medicare before filing a lien against the patient.

¶ 17     We recognize that a division of this court recently reached a different conclusion in *Harvey v. Centura Health Corp. & Catholic Health Initiatives*, 2020 COA 18.  In that case, the division viewed the term "primary" through the lens of federal Medicare law and concluded that the General Assembly intended to limit a hospital's pre-lien billing requirements when a patient injured as a result of negligence of another person is a Medicare beneficiary.  The division considered the statute to be unambiguous and did not consider the legislative history.[6]

¶ 18     Given that two divisions of this court deduce alternative constructions from the plain language of the statute, we look to the

___

[5] Medicare is the federal health insurance program for those who qualify due to age, disability, or disease.  *See* U.S. Dep't of Health & Human Servs., Ctrs. For Medicare & Medicaid Servs., *What's Medicare?*, https://perma.cc/8EZL-322Y.
[6] We note that Harvey's case differed from Garcia's in that Harvey's auto insurance policy included medical coverage.

evolution of the language of the statute to determine which alternative construction is in accord with the legislature's objective. *See Three Bells Ranch Assocs. v. Cache La Poudre Water Users Ass'n,* 758 P.2d 164, 172 (Colo. 1988) (noting that successive drafts of a bill may aid in determining legislative intent). We also consider the consequences of our construction. *See Martin,* 27 P.3d at 851.

## B. Legislative History

¶ 19  At the outset, we observe that nothing in the legislative history suggests that the General Assembly intended the word "primary" to be interpreted as it is used in the federal Medicare secondary payer provisions. In fact, we find no indication that the legislature intended to exclude Medicare beneficiaries from the prerequisite health insurance billing requirement for a hospital lien. For these reasons, and because the federal definition of Medicare as a "secondary payer" does not control the meaning of the statute's phrase "primary medical payer of benefits," we disagree with the analysis in *Harvey.*

¶ 20  On April 9, 2015, Colorado Republican Senator Bill L. Cadman and Democratic Representative Dickey Lee Hullinghorst sponsored the bill amending the hospital lien statute to "require[] a hospital to

12

submit charges for hospital care and services to a patient's payer of benefits, as defined in the bill, before a lien for hospital care is created." S.B. 15-265, 70th Gen. Assemb., 1st Reg. Sess., Bill Summary (Colo. 2015) (as introduced in Senate), https://perma.cc/XYM5-UPTS. The statute's nine categories of "payers of benefits," listed in footnote 2 above, remained the same from the bill's introduction to its final version.

¶ 21 However, as relevant here, the introduced version varied from the final version as follows:

- In the introduced version, subsection (1) mandated that "[b]efore a lien is created, [a hospital shall submit charges] *to all payers of benefits available to the injured person.*" *Id.* § 1 (emphasis added). The subsection did not specify which payers of benefits were to be billed, liken the requirement to "the same manner as used by the hospital" for billing patients who are not wrongfully injured, or include the language "to the extent permitted by state and federal law."

- The language in subsection (2) of the final bill, permitting a lien if the injured person lacks insurance, did not

appear in the introduced version.  *See* S.B. 15-265, 70th Gen. Assemb., 1st Reg. Sess. (Colo. 2015) (as enrolled, May 14, 2015), https://perma.cc/J2SJ-7GLM.

¶ 22    While the introduced version required pre-lien billing of "all payers of benefits," that language was later amended, in the April 21, 2015, version of the bill, to include the principal words at issue in this case, which specify that hospitals should submit charges to "the property and casualty insurer and the primary medical payer of benefits available to and identified by or on behalf of the injured person, to the extent permitted by state and federal law."  S.B. 15-265, 70th Gen. Assemb., 1st Reg. Sess. (Colo. 2015) (as engrossed), https://perma.cc/K2QJ-K49Y.  We perceive this change to be a practical revision to allow for a lien before numerous insurers had been billed in sequence, and years had passed.

¶ 23    Senator Cadman introduced the April 21 version of the bill to the full Senate chamber, stating that (1) liens against an injured person were "egregious"; (2) they were a "second injury" to someone injured by the wrongful actions of another party; (3) "liens are a hammer"; and (4) "shouldn't the lien be the last resort?"  He then asked for an "aye" vote.  2d Reading on S.B. 15-265 before the S.,

14

70th Gen. Assemb., 1st Reg. Sess., https://perma.cc/YT4X-JKCD. The bill passed in the Senate.

¶ 24    In the House, subsection (1) was further amended in the May 1, 2015, version to include "in the same manner as used by the hospital for patients who are not injured as the result of the negligence or wrongful acts of another person," S.B. 15-265, 70th Gen. Assemb., 1st Reg. Sess. § 1 (Colo. 2015) (as revised), https://perma.cc/AM6W-SEF8.

¶ 25    The bill progressed through many iterations before its final form; yet, the General Assembly did not add language referring specifically to Medicare in any version of the bill. The legislature could have clearly distinguished its treatment of private and government payers, as some states have done, but it did not.[7] Thus, we perceive no indication that the General Assembly intended

---

[7] Alabama and Utah are two such states. *See* Ala. Code § 35-11-371(b)(2) (2019) (providing that hospitals may have a lien on injured persons "covered by a governmental payor including Medicare or Medicaid" before billing the payer); Utah Code Ann. § 38-7-1(3)(a) (West 2019) (providing that "a hospital may not assert a lien . . . if the services provided by the hospital are covered by . . . private health insurance").

to exclude Medicare beneficiaries from the lien protections offered by the amended statute.[8]

¶ 26    Rather, we perceive the legislative intent to be clear. The General Assembly enacted the 2015 amendments to protect insured accident victims, including Medicare recipients, from hospital liens.

¶ 27    We therefore conclude that under these facts, Medicare is a "primary medical payer of benefits" under the statute. The legislative history reveals that our construction is aligned with the legislature's objective and favors the public interest. *See* § 2-4-201(1)(e); *Terry*, 791 P.2d at 376. Accordingly, Medicare must be billed before a lien is filed, unless such billing is not permitted by federal law. We conclude, in Part V below, that such billing is permitted.

C. General Consequences of Our Construction

---

[8] We may have reached a different conclusion for injured persons with Medicaid as their only health insurance. There was substantial discussion of Medicaid in the legislative history, and the amended statute specifically refers to the "Colorado Medical Assistance Act" (Medicaid) twice. *See* § 38-27-101(6), (9)(f). However, because it is undisputed that Garcia's primary health insurance is Medicare, we need not address that question.

¶ 28    We observe that the original intent of the hospital lien statute, to protect hospitals' interest in payment for medical services to injured persons who may not be able to pay their medical debts, is not defeated by our construction. *See Wainscott,* ¶ 29. The covered hospital costs of Medicare beneficiaries *will be paid,* by a liability insurer or by Medicare, if the hospital bills the liability insurer and Medicare.

¶ 29    We recognize that, in cases of wrongful injury, Medicare requires hospitals to follow certain billing procedures that may affect the timing and amount of payments received. Specifically, a hospital may not bill Medicare until 120 days after it files a claim with a liability insurer or files a hospital lien, if it can reasonably expect payment from a liability insurer during that interval. If a hospital cannot reasonably expect payment during the 120 days, it can bill Medicare earlier. And certainly, the amount of payments to hospitals may be affected by our construction. But the General Assembly's intent in the amended statute is to protect wrongfully injured insured people from the further injury of hospital liens — not to maintain the maximum possible payments for hospitals. *See*

*id.* at ¶ 21 ("[I]t is the existence of the lien itself that prejudices [the plaintiffs].").

¶ 30    The purpose of the hospital lien statute has always been to preserve "reasonable and necessary" payments to hospitals. However, the goal of Centura's billing and lien practices is to achieve maximum payments — these practices are what the General Assembly sought to curb in enacting the 2015 version of the statute.

¶ 31    Under the Medicare rules, and our construction of the Colorado hospital lien statute, when a wrongfully injured Medicare beneficiary receives medical treatment at a hospital, the hospital must first bill the tortfeasor's liability insurer. Then, if no payment has been made or can reasonably be expected to be made during the "promptly period," (1) it may bill Medicare, at Medicare rates (giving up the right of action against a liability insurance settlement or judgment for Medicare-covered services to Medicare); and (2) if it has billed the property and casualty insurer identified by or on behalf of the injured person, it may file a lien for services not covered by Medicare. *See* U.S. Dep't of Health & Human Servs., Ctrs. For Medicare & Medicaid Servs., *Medicare Secondary (MSP)*

*Manual,* ch.2, § 40.2B, D, E (2016) (*MSP Manual*). In any scenario, the hospital will be paid through liability insurance or by Medicare.

## V. Medicare Billing Before/Without a Lien Not Precluded by Law

¶ 32 The district court concluded that requiring Centura to bill Medicare before creating a lien caused a "potential" conflict with federal law, and Centura contends that requiring it to first bill Medicare creates an actual conflict.

¶ 33 The district court found a potential conflict, in part, because the Medicare statute and regulations effectively preclude a hospital from filing a lien against a Medicare beneficiary after the hospital has billed Medicare for its services. The court found that the General Assembly could not have intended for hospitals to forgo a lien.

¶ 34 Presuming that it has a right to a hospital lien against Medicare beneficiaries, and equating "billing" with "creating a lien," Centura argues that because Medicare requires a tortfeasor's insurance to be billed during the "promptly period," before billing Medicare, the hospital lien statute actually conflicts with federal law. Centura is wrong.

¶ 35    We acknowledge that the effect of requiring Centura to bill Medicare before filing a lien against the patient (for Medicare-covered services) is that Centura may not subsequently file a lien against Medicare patients (for those same services).  But that result is "permitted by state and federal law," and certainly is not prohibited by federal law.  § 38-27-101(1).  It is simply an outcome dictated by the Medicare payment provisions.  Unless the hospital chooses to risk not billing Medicare, the result is that the hospital is certain to be paid, at least at Medicare rates.  This result does not conflict with the purpose of the hospital lien statute as set forth in *Wainscott.*

¶ 36    Centura also argues that our interpretation stands as an obstacle to the federal purpose of making Medicare a secondary payer under these circumstances.  Centura postulates that a tortfeasor's liability insurer might escape liability, and leave Medicare unreimbursed, because the insurer will not pay a hospital's bill absent a lien.  We think this concern is unfounded.  A lien is not necessary to a finding of liability.  And when a third party is liable for a Medicare beneficiary's injuries, Medicare will, by its own policies, be reimbursed for its payments.

20

¶ 37    When a hospital bills a tortfeasor's liability insurer without filing a lien (as it must under Medicare regulations and our interpretation of state law), either the insurer will pay it, in which case Medicare is not on the hook; or it will reject the bill because its insured is not liable, in which case Medicare will have to pay, but not because the hospital did not have a lien.  Or, the liability insurer will settle with the injured party, who will be obligated to reimburse Medicare.

¶ 38    Nothing in our interpretation obstructs the federal purpose or elevates Medicare to a primary payer under those circumstances. Our interpretation affects only the hospitals' right to a lien.

### A. Colorado May Limit Hospital Liens Against Medicare Beneficiaries

¶ 39    Hospital liens are creatures of state law, and each state may establish the boundaries for hospitals' rights (if any) to a lien. Colorado has always limited hospitals' rights to a lien.  Before it was amended, the hospital lien statute provided hospitals a right to a lien for only reasonable and necessary charges, excluding workers' compensation cases and charges arising after a judgment or settlement.  The statutory amendments further limited the right to

21

a hospital lien by requiring, as relevant here, prior billing of both liability insurance and the injured person's primary health insurance.

¶ 40    No federal law prevents Colorado from limiting the rights of hospitals to file a lien against Medicare beneficiaries. In fact, states may expressly exclude persons covered by Medicare from a hospital lien statute. *See, e.g.*, Ind. Code § 32-33-4-3(b)(3)(E) (2019) (stating that the hospital lien statute is not applicable to persons covered by Medicare). Federal law is clear that "[t]he [Medicare as a secondary payer] provisions do not create lien rights when those rights do not exist under State law." *MSP Manual*, ch. 2, § 40.2F.

### B. Liens Are Not Required for "Billing"

¶ 41    The *MSP Manual* provides, in a section entitled "Billing Options and Requirements – Alternative Billing," that "[g]enerally, providers, physicians, and other suppliers must bill liability insurance prior to the expiration of the promptly period rather than bill Medicare. (The filing of an acceptable lien against a beneficiary's liability insurance settlement is considered billing the liability insurance.)" *Id.* § 40.2B. Centura argues that this section indicates that Medicare requires hospitals to file a lien. We disagree.

22

¶ 42    By its plain language, this section requires that hospitals "bill" liability insurance, and provides that one way the billing requirement may be satisfied is by filing an "acceptable" lien. As discussed in Part V.A, liens are creatures of state law and states define what liens are "acceptable"; we reject the proposition that Medicare requires states to permit liens against its beneficiaries.

¶ 43    When asked at oral argument whether it could comply with Medicare regulations by billing the liability insurer, without filing a lien, Centura merely argued that such billing would be "futile" for its collections. Even assuming such futility, we perceive no conflict between our interpretation of the statute and federal law.[9]

---

[9] In fact, the following example from the Centers for Medicare & Medicaid Services' website supports this result:

> Joan is driving her car when someone in another car hits her. Joan has to go to the hospital. The hospital tries to bill the other driver's insurance company. The insurance company disputes who was at fault and won't pay the claim right away. The hospital bills Medicare, and Medicare makes a conditional payment to the hospital for health care services Joan got. When a settlement is reached with the other driver's insurance company, Joan must make sure Medicare gets repaid for the conditional payment.

Accordingly, we reject Centura's and the district court's contrary interpretation.

¶ 44    We recognize, as a practical matter, that hospitals without a lien are guaranteed to collect medical payments at only Medicare rates.  At the same time, Medicare-insured victims of negligent or wrongful injury will not suffer the additional injury of a lien, and they are likely to recover a greater percentage of the liability coverage available.  The latter interests are the ones the General Assembly sought to protect in amending the hospital lien statute, while maintaining the original purpose of the hospital lien statute by permitting immediate liens for uninsured patients.  *See* § 38-27-101(2).

## VI. Out-of-State Cases

¶ 45    We are not persuaded by the out-of-state cases relied on by the district court, and by Centura on appeal, that our conclusion should be different.  These cases interpret statutes with different effects than the Colorado hospital lien statute and in any event are

---

U.S. Dep't of Health & Human Servs., Ctrs. For Medicare & Medicaid Servs., *Medicare & Other Health Benefits: Your Guide to Who Pays First* 19 (rev. Dec. 2018), https://perma.cc/KDB3-H73W.

not binding precedent on this court. Most importantly, however, these cases do not conflict with our opinion.

¶ 46 In *Joiner v. Medical Center East, Inc.*, 709 So. 2d 1209, 1209-10, 1221 (Ala. 1998), the Alabama Supreme Court concluded that under applicable Medicare law, the hospital had a right "to obtain full payment of its charges" from the settlement to an injured Medicare beneficiary, where the hospital did not bill Medicare. That right is not compromised by this opinion. Only the right to a lien is affected. *Joiner* did not involve interpretation of a state law on hospital liens.

¶ 47 In *Parkview Hospital, Inc. v. Roese*, 750 N.E.2d 384, 391 (Ind. Ct. App. 2001), the Indiana Court of Appeals concluded that under federal law and the state hospital lien statute, after the "promptly period," the hospital may choose to (1) submit charges to Medicare and waive its lien or (2) pursue its claim against a settlement and waive Medicare reimbursement. That choice remains intact under our construction of the Colorado version of the statute, but rather than waiving a lien if it chooses to bill Medicare, the hospital must withdraw any bill or claim submitted to a liability insurer.

¶ 48    In *Speegle v. Harris Methodist Health System*, 303 S.W.3d 32, 37-40 (Tex. App. 2009), the Court of Appeals of Texas invalidated a portion of the Texas timely billing hospital statute (not the hospital lien statute) to the extent it required a hospital to bill Medicare when settlement funds were available. Again, nothing in our opinion requires a hospital to bill Medicare. Billing Medicare is a prerequisite only to filing a lien.

## VII. Relief

¶ 49    Garcia asks that we reverse the district court's denial of her cross-motion for summary judgment and order that the motion be granted. Usually, the denial of a motion for summary judgment is not an appealable ruling. *See Dep't of Nat. Res. v. 5 Star Feedlot Inc.*, 2019 COA 162M, ¶ 36. However, "when a district court rules on cross-motions for summary judgment — denying summary judgment for one party and granting summary judgment for the other — the judgment is final and we may review the denial." *Id.*

¶ 50    Here, although Centura couched its motion as a motion to dismiss under C.R.C.P. 12(b)(5), the motion was properly treated as a motion for summary judgment because Centura attached affidavits and exhibits to its motion, *see Churchey v. Adolph Coors*

26

*Co.*, 759 P.2d 1336, 1339 (Colo. 1988), and the district court considered these attachments in its order. *See Bristol Bay Prods., LLC v. Lampack*, 2013 CO 60, ¶ 46 (holding that this is "beyond what is permissible absent conversion to a summary judgment motion"). Because the district court considered matters outside the pleadings, it was required to convert the motion to dismiss to a motion for summary judgment. *Id.*; *see* C.R.C.P. 12(b)(5).

¶ 51 Consequently, and because Centura did not come forward with evidence demonstrating a genuine issue of material fact, we may direct the entry of judgment against it and in favor of Garcia. *See 5 Star*, ¶¶ 36-37.

## VIII. Conclusion

¶ 52 We reverse the district court judgment granting Centura's motion to dismiss (properly considered a motion for summary judgment) and denying Garcia's motion for summary judgment. We conclude that Garcia was "subject to a lien in violation of [section 38-27-101]," § 38-27-101(7), and we order that summary judgment be granted as to her individually. We express no opinion as to "others similarly situated." The case is remanded for the district

27

court to enter judgment in favor of Garcia and award her recovery in accordance with section 38-27-101(7).

JUDGE FREYRE and JUDGE GROVE concur.