Steven D. OUTLER, Petitioner–Appellee,

v.

Gale NORTON, Attorney General; Aristedes Zavaras, Executive Director, Colorado Department of Corrections (Successor in Interest to Frank Gunter), Donna (Lohnas) Thurlow, Administrator for Offender Time/Release Operations, Colorado Department of Corrections; Nancy McMall, Case Manager, Colorado Department of Corrections; and Colorado Department of Corrections, Respondents–Appellants.

No. 96CA0488.

Colorado Court of Appeals, Div. V.

Feb. 20, 1997.

No Appearance for Petitioner–Appellee.

Gale A. Norton, Attorney General, Stephen K. Erkenbrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Paul S. Sanzo, First Assistant Attorney General, Denver, for Respondents–Appellants.

Opinion by Judge ROY.

In this C.R.C.P 106(a)(2) action, the Department of Corrections (DOC) appeals a trial court order compelling it to set parole eligibility for plaintiff, Steven D. Outler (inmate). Inmate had been twice convicted of aggravated robbery. The trial court set a parole eligibility date at completion of 50 percent of inmate's sentence for the second aggravated robbery and further ordered DOC to apply presentence confinement credit (PSC) to the sentence for the second aggravated robbery rather than the first. We reverse and remand for further proceedings.

Inmate pled guilty to the charge of aggravated robbery on March 14, 1986, and received an eight-year sentence to be served concurrently with other shorter sentences. Upon reconsideration, the court reduced inmate's sentence on the aggravated robbery charge to four years to run concurrently with shorter sentences. After serving two years, on March 15, 1988, inmate was placed on parole for five years with a parole discharge date of March 15, 1993.

On November 3, 1989, or about 20 months after being paroled, inmate was arrested on a second aggravated robbery charge. On November 30, 1989, the Colorado State Parole Board issued an order revoking parole as to the remainder of inmate's first sentence and ordering his return to DOC. On November 5, 1990, upon conviction for the second aggravated robbery, the second sentencing court sentenced inmate to thirteen years in the DOC.

On March 11, 1994, the second sentencing court reconsidered inmate's sentence pursuant to Crim. P. 35(b) and reduced it to ten years. In that proceeding, the court also held that inmate had completed the first sentence and was not on parole at the time of the second aggravated robbery. The People did not appeal this ruling.

DOC then calculated inmate's parole eligibility date (PED) at 75 percent of his sentence pursuant to § 17–22.5–403(2), C.R.S. (1996 Cum.Supp.). DOC also credited to inmate's first sentence, 367 days of PSC earned prior to sentencing on the second offense.

Inmate commenced this proceeding arguing his PED should be set at 50 percent of his sentence because he had not previously been convicted of a crime of violence as defined by § 16–11–309, C.R.S. (1996 Cum. Supp.). At the hearing, inmate also argued his PSC should be applied to the sentence on the second aggravated robbery.

The trial court found, based on evidence presented at the hearing, that inmate had used a "deadly weapon" during commission of the first aggravated robbery. However, the court held § 17–22.5–403(2) did not apply because inmate had not been previously convicted of a separate count of "crime of violence," pursuant to § 16–11–309(4), C.R.S. (1996 Cum.Supp.), and therefore, inmate's PED should be calculated at 50 percent of the sentence. In addition, the court held inmate's 367 days of PSC should have been applied to the second sentence, in light of the second sentencing court's ruling that he was not on parole at the time of the second aggravated robbery.

I.

DOC first argues the trial court erred in interpreting § 17–22.5–403(2) to require a conviction of a crime of violence in conjunction with the conviction of the first aggravated robbery. We agree.

Interpretation of a statute is a question of law. Therefore, we independently review the trial court's construction of the statute. *Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995).

■ Any interpretation of a statute must reflect the intent of the General Assembly and first requires giving effect to the plain and ordinary meaning of the statutory language itself. *People v. Bergen,* 883 P.2d 532 (Colo.App.1994).

■ Section 17–22.5–403(2) reads in pertinent part:

> any person convicted and sentenced for ... aggravated robbery, which person has previously been convicted of a crime which *would have been* a crime of violence as defined in section 16–11–309, C.R.S., shall be eligible for parole after such person has served seventy-five percent of the sentence imposed .... (emphasis added)

DOC argues the language "would have been" indicates the statute requires only a prior conviction that meets the definition of a crime of violence in § 16–11–309(2). We agree.

At the time of inmate's first aggravated robbery, § 16–11–309(2)(a)(I), C.R.S. (1986 Repl.Vol.) defined a crime of violence, in pertinent part, as:

> a crime in which the defendant used, or possessed and threatened the use of, a deadly weapon during the commission or attempted commission of ... [a] robbery....

The present version of that statute, § 16–11–309(2)(a)(I), C.R.S. (1996 Cum.Supp.), defines a crime of violence, in pertinent part, as follows:

> 'Crime of violence' means any of the crimes specified in subparagraph (II) of this paragraph (a) committed, conspired to be committed, or attempted to be committed by a person during which, or in the immediate flight therefrom, the person:
>
> (A) Used, or possessed and threatened the use of, a deadly weapon; or
>
> (B) Caused serious bodily injury or death to any other person except another participant.

(II) Subparagraph (I) of this paragraph (a) applies to the following crimes:

> . . . .

> (F) Aggravated Robbery....

The trial court found inmate used a deadly weapon in the commission of the first aggravated robbery. This finding is not disputed on appeal. Accordingly, under either provision of the statute defining "crime of violence," inmate's prior conviction *would have been* a crime of violence based on the use of a deadly weapon.

Nevertheless, the trial court held that § 17–22.5–403(2) does not apply in this instance since it refers to § 16–11–309 in its entirety and therefore must be read to include § 16–11–309(4), C.R.S. (1986 Repl.Vol. 8A), which reads as follows:

> In any case in which the accused is charged with a crime of violence as defined in subsection (2)(a)(I) of this section, the indictment or information shall so allege in a separate count, even though the use or threatened use of such deadly weapon or infliction of such serious bodily injury or death is not an essential element of the crime charged.

The trial court reasoned that because § 17–22.5–403(2) does not limit its reference to § 16–11–309 to the definition of "crime of violence" contained in § 16–11–309(2), the General Assembly must have meant to include § 16–11–309(4) and, thus, to require a separate conviction for "crime of violence" before § 17–22.5–403(2) is implicated.

■ The trial court also relied on the rule of lenity, by which ambiguities in a criminal statute are resolved in favor of the criminal defendant, and *in pari materia,* a rule of construction which requires a court to read together all parts of a statute in order to give it a harmonious effect. *See J.A. Tobin Construction Co. v. Weed,* 158 Colo. 430, 407 P.2d 350 (1965).

We conclude, however, that the plain and ordinary meaning of the words "would have been a crime of violence" in § 17–22.5–403(2), is not so limited and includes that situation in which a criminal defendant has been previously convicted of a crime which meets the

definition of crime of violence contained in § 16–11–309(2).

Another division of this court reached the same conclusion in *Busch v. Gunter,* 870 P.2d 586 (Colo.App.1993), with respect to a similar statutory provision in effect before § 17–22.5–403(2). Under the statute there at issue, anyone who had been "previously convicted of a crime of violence," was ineligible for parole until such person completed 75 percent of their sentence. In *Busch,* the defendant was convicted of a prior enumerated crime involving a deadly weapon in another state but was not separately charged with a crime of violence or similar offense under the laws of that state. Nevertheless, the court decided that defendant's prior conviction constituted a crime of violence for the purposes of calculating parole and that, therefore, his PED should be set at 75 percent of his sentence.

■ Assuming, arguendo, an ambiguity, from a review of the legislative history relating to the current version of § 17–22.5–403, passed in 1990, we find it evident that the General Assembly did not intend the 75 percent provision to apply only to persons whose prior violent crime resulted in a separate charge and separate conviction. Rather, it had the general goal of making parole eligibility more difficult for all persons who have previously committed a violent crime. *See Hearing on H.B. 1327 Before the First Conference Committee,* 57th Gen. Assembly, 2d Reg. Session (May 8, 1990).

Inmate's prior conviction involved the use of a deadly weapon and thus met the definition of a crime of violence under § 16–11–309(2). Accordingly, DOC was correct in calculating inmate's PED at 75 percent of his current sentence pursuant to § 17–22.5–403(2) and the trial court erred in ruling otherwise.

## II.

DOC also contends the trial court erred in applying inmate's 367 days of presentence confinement credit (PSC) to the sentence imposed on the second offense. We conclude the matter must be remanded for further consideration.

Although there is no constitutional right to receive PSC, *People v. Corbett,* 713 P.2d 1340 (Colo.App.1985), § 16–11–306, C.R.S. (1996 Cum.Supp.) requires the sentencing court to include the amount of PSC to which the inmate is entitled in the mittimus reflecting the sentence imposed. The statute further provides that DOC shall deduct the PSC from the inmate's sentence and make any allocation of the PSC between sentences.

Section 16–11–306 provides, in part:

If a defendant is serving a sentence or is on parole for a previous offense when he commits a new offense and he continues to serve the sentence for the previous offense while charges on the new offense are pending, the credit given for presentence confinement under this section shall be granted against the sentence the defendant is currently serving for the previous offense and shall not be granted against the sentence for the new offense.

Here, as part of a Crim. P. 35(b) hearing in this matter, the second sentencing court ruled that when inmate committed the second aggravated robbery he had completed the sentence imposed by the first sentencing court for aggravated robbery.

In *Pipkin v. Brittain,* 713 P.2d 1358 (Colo. App.1985), the defendant brought a habeas corpus proceeding in the Fremont County District Court to review the ruling of the Denver County District Court regarding his PSC. A division of this court held that the Fremont County District Court lacked jurisdiction and that review of the findings or orders of the Denver County District Court was limited to appellate review.

DOC argues, relying in part on *Pipkin,* that the second sentencing court did not have jurisdiction to determine the status of inmate with respect to his first sentence in the Crim. P. 35(b) proceedings. Inmate did not bring his Crim. P. 35(b) motion in the second sentencing court as a collateral attack upon the sentence imposed by the first sentencing court.

■ We conclude the second sentencing court had jurisdiction to determine inmate's status for its own sentencing purposes but

that determination is not binding upon DOC in this proceeding. Therefore, it was error for the trial court in these proceedings to bind DOC to the second sentencing court's findings and not conduct a separate review.

■ With respect to the merits, the issue of the PSC was not raised until late in the hearing and considered without prior notice to DOC. Also, the record is incomplete. The DOC records in evidence indicate that there may be some merit to DOC's position. However, without a fully developed record, we cannot review the issue and therefore remand is necessary for findings as to the status of inmate with respect to his first sentence while he awaited trial and sentencing for the second aggravated robbery. *See Micciche v. Billings*, 727 P.2d 367 (Colo. 1986).

■ We note further that the purpose of § 16–11–306 is to prevent an inmate from receiving double credit for a pretrial and presentence incarceration. Therefore, in the event inmate's first sentence was completed during any pretrial or presentence incarceration, he may be entitled to some credit against the second sentence.

The order of the trial court with respect to parole eligibility is reversed and the cause is remanded for further findings by the trial court with respect to inmate's status while awaiting trial and sentencing for the second aggravated robbery and for entry of an order determining inmate's parole eligibility date consistent with this opinion.

DAVIDSON and ROTHENBERG, JJ., concur.