The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 31, 2020

## 2020COA177

**No. 19CA0890, *Owens v. Williams* — Criminal Law — Parole — Inmate and Parole Time Computation — One Continuous Sentence — Parole Eligibility**

A division of the court of appeals holds that when a defendant is convicted of offenses to which different parole eligibility date calculation statutes apply, the Department of Corrections may, in appropriate circumstances, in treating the sentences as one continuous sentence (as it must, *see* § 17-22.5-101, C.R.S. 2020; *Exec. Dir. of Colo. Dep't of Corr. v. Fetzer*, 2017 CO 77), apply just one such statute to the one continuous sentence, even if that means the defendant's parole eligibility date would be later than if the sentences for each offense were treated separately for purposes of calculating the parole eligibility date.

COLORADO COURT OF APPEALS                              **2020COA177**

Court of Appeals No. 19CA0890
Fremont County District Court No. 19CV31
Honorable Michael W. Meyrick, Magistrate

Nathanael E. Owens,

Plaintiff-Appellant,

v.

Dean Williams, Mary Carlson, and Scott Dauffenbach,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE J. JONES
Pawar, J., concurs
Berger, J., specially concurs

Announced December 31, 2020

Nathanael E. Owens, Pro Se

Philip J. Weiser, Attorney General, Nicole S. Gellar, First Assistant Attorney
General, Denver, Colorado, for Defendants-Appellees

¶ 1    Plaintiff, Nathanael E. Owens, is an inmate serving a lengthy sentence in the custody of the Colorado Department of Corrections (DOC) arising from convictions for three offenses.  He sued employees of the DOC[1] under C.R.C.P. 106(a)(2) seeking a writ of mandamus, claiming that the DOC has improperly calculated his parole eligibility date.  The DOC moved to dismiss, and the district court granted its motion.

¶ 2    Ultimately, this case turns on whether the DOC can rely on section 17-22.5-403(2.5), C.R.S. 2020, to calculate Owens' parole eligibility date as the date he will have served seventy-five percent of his entire composite sentence.  Owens contends that because he wasn't convicted of a crime of violence, that provision doesn't apply. The provision that does apply, he says, is section 17-22.5-403(1), which sets forth the general rule that an inmate is eligible for parole after serving fifty percent of his sentence.

---

[1] The defendants named in Owens' complaint include Dean Williams, Mary Carlson, and Scott Dauffenbach.  Although Owens sued the individuals in their official capacities, nothing in the record indicated the nature of their official titles or positions.

¶ 3     We conclude that the DOC doesn't have a clear duty to calculate Owens' parole eligibility date in the way Owens requests. We agree with Owens that his consecutive sentences for his offenses must be treated as one continuous sentence for the purpose of calculating his parole eligibility date.  But because he was convicted of two class 3 felony counts of aggravated robbery, the DOC could apply the seventy-five percent multiplier of section 17-22.5-403(2.5)(b)(I) when determining the parole eligibility date for the one continuous sentence, notwithstanding the fact that Owens is also serving a sentence for an offense that doesn't fall within section 17-22.5-403(2.5).  We therefore affirm.

## I.     Background

¶ 4     In 2017, Owens pleaded guilty to two class 3 felony counts of aggravated robbery and one class 5 felony count of vehicular eluding.  The district court sentenced him to ten years in DOC custody on each of the aggravated robbery convictions and four years on the vehicular eluding conviction, all to run consecutively.

¶ 5     The DOC initially calculated Owens' parole eligibility date using a "hybrid" method that it had employed for many years: it applied the seventy-five percent multiplier of section 17-22.5-

2

403(2.5) to the convictions for aggravated robbery and applied the fifty percent multiplier of section 17-22.5-403(1) to the conviction for vehicular eluding.  This resulted in a parole eligibility date of seventeen years from the date Owens began serving his sentence, less earned time credit.[2]

¶ 6 Owens filed this case under C.R.C.P. 106(a)(2) seeking a writ of mandamus requiring the DOC to calculate his parole eligibility date by treating his sentences as one continuous sentence and applying the fifty percent multiplier of section 17-22.5-403(1).  He asserted that such a calculation is required because he wasn't and hadn't previously been convicted of any crime of violence.

¶ 7 The DOC moved to dismiss.  It pointed out that it had recalculated Owens' parole eligibility date by treating the three sentences as one continuous sentence as required by section 17-22.5-101, C.R.S. 2020 ("For the purposes of this article, when any inmate has been committed under several convictions with separate sentences, the [DOC] shall construe all sentences as one

---

[2] The calculation can be expressed in mathematical terms as $(.75 \times 10 \text{ (years)} \times 2 \text{ (number of convictions/sentences)}) + (.50 \times 4 \text{ (years)})$.

continuous sentence."). *See Exec. Dir. of Colo. Dep't of Corr. v. Fetzer*, 2017 CO 77 (holding that this provision applies to all calculations of parole eligibility dates). The DOC then applied the seventy-five percent multiplier to the composite twenty-four-year sentence, which resulted in a parole eligibility date about three months later than the originally calculated date. The DOC argued that its new calculation rendered Owens' claim moot and, in the alternative, that Owens had failed to show a clear right to the relief he requested (applying the fifty percent multiplier) because the seventy-five percent multiplier of section 17-22.5-403(2.5)(a)(I) applies to Owens' two class 3 felony aggravated robbery convictions.

¶ 8    Relying on section 17-22.5-403(2.5)(b)(II), Owens responded that section 17-22.5-403(2.5) can't apply unless the offender has been previously convicted of a crime of violence.

¶ 9    The district court granted the DOC's motion on the DOC's alternative ground that Owens doesn't have a clear right to have his parole eligibility date calculated using the fifty percent multiplier.

## II.    Discussion

¶ 10    The parties' arguments on appeal track their arguments in the district court. Like the district court, we conclude that Owens is

mistaken that he has a clear right to application of the fifty percent multiplier of section 17-22.5-403(1).[3]

## A.     Standard of Review

¶ 11     Because the DOC attached an affidavit to its motion to dismiss, we will treat the motion as one for summary judgment. *See* C.R.C.P. 12(b) (if matters outside the pleadings are submitted with a motion to dismiss for failure to state a claim, and considered by the court, "the motion shall be treated as one for summary judgment"); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1339 (Colo. 1988); *Garcia v. Centura Health Corp.*, 2020 COA 38, ¶ 50. We review a district court's summary judgment de novo. *Burton v. Colo. Access*, 2018 CO 11, ¶ 19. Summary judgment is proper when the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c).

---

[3] We reject the DOC's assertion that because it recalculated Owens' parole eligibility date by treating the three sentences as one continuous sentence, his claim is moot. That was just one aspect of the recalculation. Owens' challenge to the use of the seventy-five percent multiplier rather than the fifty percent multiplier presents an issue that could affect his parole eligibility date.

¶ 12     This case also turns largely on questions of statutory interpretation.  We also review such questions de novo.  *Colo. Oil & Gas Comm'n v. Martinez*, 2019 CO 3, ¶ 19; *Nowak v. Suthers*, 2014 CO 14, ¶ 17 (construing sections 17-22.5-101 and 17-22.5-403(1)).  When we interpret a statute, we look to the entire statutory scheme to give consistent, harmonious, and sensible effect to all its parts, and we apply words and phrases consistent with their plain and ordinary meanings.  *Martinez*, ¶ 19; *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 188-89 (Colo. 2011).  If the statutory language is clear, we apply it as written, without resorting to other principles of statutory interpretation.  *Martinez*, ¶ 19; *Denver Post Corp.*, 255 P.3d at 1088.

## B.     Analysis

¶ 13     We begin by recognizing the limiting principles applicable to suits for mandamus relief.  Under C.R.C.P. 106(a)(2), a person may petition a court for an order

> to compel a . . . governmental body . . . to
> perform an act which the law specially enjoins
> as a duty resulting from an office, trust, or
> station, or to compel the admission of a party
> to the use and enjoyment of a right or office to
> which his is entitled, and from which he is

> unlawfully precluded by such . . .
> governmental body . . . .

¶ 14     Mandamus is an extraordinary remedy that may be used to compel performance by a public official of a plain legal duty imposed on the official by virtue of the official's office. *Bd. of Cnty. Comm'rs v. Cnty. Road Users Ass'n*, 11 P.3d 432, 437 (Colo. 2000). It is therefore available "to compel the performance of a purely ministerial duty involving no discretionary right and not requiring the exercise of judgment." *Id.*; *accord Verrier v. Colo. Dep't of Corr.*, 77 P.3d 875, 877-78 (Colo. App. 2003) (involving calculation of earned time credit).

¶ 15     The burden on the plaintiff is heavy. The plaintiff must show that (1) he has a clear right to the relief he seeks; (2) the defendant has a clear duty to perform the act requested; and (3) no other remedy is available. *Cnty. Road Users Ass'n*, 11 P.3d at 437.

¶ 16     With these strictures in mind, we turn to the merits.

¶ 17     First off, the issue whether the DOC must treat all three of Owens' sentences as one continuous sentence isn't disputed. The DOC concedes, as it did in the district court, that *Fetzer* dictates

that it must do so. And the DOC in fact recalculated Owens' parole eligibility date by doing so.

¶ 18     The real issue, then, is whether the DOC has a clear duty to apply the fifty percent multiplier of section 17-22.5-403(1) to that one continuous sentence. It does not.

¶ 19     In *Fetzer*, the court held that although the DOC must treat all sentences as one continuous sentence, when those sentences are for a mix of offenses that implicate different parole eligibility date calculation provisions, "the [DOC's] decision to apply some form of governing sentence theory, or some other theory or device altogether, in administering the relevant class of composite continuous sentences [is] a matter within its expertise and discretion." *Fetzer*, ¶ 20.

¶ 20     This case involves offenses, and resulting sentences, subject to two different calculation provisions.

¶ 21     Section 17-22.5-403(1) says, as now relevant, that a person sentenced for class 3 and class 5 felonies "shall be eligible for parole after such person has served fifty percent of the sentence imposed . . . ." At first glance, this provision would seem to apply — as Owens appears to argue — to all three of his sentences. But

subsections (2.5)(a) and (b)(I) say, "*[n]otwithstanding subsection (1) of this section,* any person convicted and sentenced for . . . aggravated robbery . . . shall be eligible for parole after such person has served seventy-five percent of the sentence imposed" if the conviction was for "a class 3 felony offense . . . ."

¶ 22    Owens pleaded guilty to two class 3 felony counts of aggravated robbery.  So while his sentence for vehicular eluding falls within subsection (1)'s fifty percent rule, his two aggravated robbery sentences fall within subsections (2.5)(a) and (b)(I)'s seventy-five percent rule.  Per *Fetzer*, under these circumstances, the DOC had discretion to apply the seventy-five percent rule to the one composite, continuous twenty-four-year sentence.  In other words, it can't be said that the DOC has a clear duty to apply the fifty percent rule to that one composite, continuous sentence.

¶ 23    But wait, Owens says, section 17-22.5-403(2.5)(a) can't apply to his aggravated robbery sentences because there was no finding that they were crimes of violence or that he had previously been convicted of a crime of violence.  For this proposition, he relies on subsection (2.5)(b)(II); *Outler v. Norton,* 934 P.2d 922 (Colo. App.

9

1997), *overruled by Meredith v. Zavaras*, 954 P.2d 597 (Colo. 1998); and *Nowak*. But he misreads that provision and the cases.

¶ 24    Section 17-22.5-403(2.5)(a) and (b) says that the seventy-five percent rule applies to a conviction and sentence for aggravated robbery if (I) the crime "is a class 2 or class 3 felony offense; *or* (II) [the crime] is a class 4 or class 5 felony offense" and the defendant "has previously been convicted of a crime of violence as defined in section 18-1.3-406, C.R.S." (Emphasis added.) Thus, a conviction for aggravated robbery as a class 3 felony plainly requires application of the seventy-five percent rule regardless of whether the offense was found to be a crime of violence or the defendant was previously convicted of a crime of violence. *See Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008) ("Generally, we presume the disjunctive use of the word 'or' marks distinctive categories."); *Pro's Closet, Inc. v. City of Boulder*, 2019 COA 128, ¶ 12 (same).

¶ 25    *Outler* is distinguishable because it addressed section 17-22.5-403(2), which applies to crimes committed after June 7, 1990, and before July 1, 2004, and expressly limits application of a seventy-five percent multiplier to sentences for certain offenses

10

where the defendant "has previously been convicted of . . . a crime of violence as defined in section 18-1.3-406, C.R.S." *See Outler*, 934 P.2d at 925-26. As discussed, section 17-22.5-403(2.5) isn't so limited.

¶ 26 *Nowak* is also distinguishable, albeit for a different reason. In that case, the court held that the fifty percent multiplier of section 17-22.5-403(1) applies to two sentences — treated as one continuous sentence under section 17-22.5-101 — even when the second sentence is imposed after the parole eligibility date for the first sentence has passed. *Nowak*, ¶¶ 1, 4, 35. The court wasn't confronted with any issue as to section 17-22.5-403(2.5) or any issue as to sentences implicating both the fifty percent multiplier and the seventy-five percent multiplier. And nothing in the court's reasoning conflicts, even implicitly, with our conclusion.

¶ 27 Perhaps Owens means to suggest that because his conviction for vehicular eluding was for a class 5 felony, and he hadn't previously been convicted of a crime of violence, section 17-22.5-403(2.5)(a) can't be applied to his one continuous sentence. But any such suggestion can't be squared with *Fetzer*'s holding that when the one continuous sentence comprises sentences subject to

11

different parole eligibility date calculation provisions, the DOC has discretion to decide how to calculate the date. *Fetzer*, ¶ 20. That discretion logically includes the option of using the calculation rule applicable to the offenses resulting in eighty-three percent of the one continuous sentence.[4]

¶ 28    In sum, Owens hasn't shown that he has a clear right to the relief he seeks or that the DOC has a clear duty to perform the act he requests. It follows that he isn't entitled to a writ of mandamus.

### III.    Conclusion

¶ 29    The judgment is affirmed.

JUDGE PAWAR concurs.

JUDGE BERGER specially concurs.

---

[4] Indeed, one could argue that doing otherwise would result in a windfall to the defendant that couldn't have been intended by the legislature — a windfall created by the mere fact that a defendant committed a less serious offense in addition to the more serious offenses subject to the seventy-five percent rule.

JUDGE BERGER, specially concurring.

¶ 30     I join the court's opinion because the court's reading of the supreme court's opinion in *Executive Director of Colorado Department of Corrections v. Fetzer*, 2017 CO 77, is not unreasonable.  Obviously, this court is bound by supreme court precedent.  *See In re Estate of Ramstetter*, 2016 COA 81, ¶ 40.

¶ 31     I write separately to explain why a wide grant of discretion to the Department of Corrections (DOC) in these circumstances is both unnecessary and inconsistent with the statutory scheme.  I do not quarrel with the court's conclusion that the DOC has wide discretion in many matters relating to the administration of Colorado's prisons.  That discretion is necessary to run a large government department, particularly a corrections department.  But when the General Assembly has definitively spoken on a subject and has displaced discretion, courts have a duty to enforce the law as written, not to grant either unlimited or even circumscribed discretion to executive branch officials to rewrite statutes.  *See Bd. of Cnty. Comm'rs v. Colo. Pub. Utils. Comm'n*, 157 P.3d 1083, 1091 (Colo. 2007) ("Our primary task in interpreting a statute is to give effect to the intent of the General Assembly.").

¶ 32    Exercising its exclusive constitutional authority, the General Assembly has prescribed that certain offenders, based on their crimes and other statutory criteria, are eligible for parole after serving fifty percent of their sentences.  § 17-22.5-403(1), C.R.S. 2020.  Other offenders, based on their crimes and other statutory criteria, must serve seventy-five percent of their sentences before being eligible for parole.  § 17-22.5-403(2.5), C.R.S. 2020.  When a single sentence is at issue, these rules are easy to apply.  But when, as here, an offender is committed on more than one sentence, the question is more complicated.[1]

¶ 33    Owens was committed on three separate sentences, ordered to run consecutively to each other; statutory law requires the DOC to treat such sentences as one continuous sentence.  § 17-22.5-101, C.R.S. 2020.  The DOC did so in this case and applied the seventy-five percent rule to *all* of Owens' sentences because at least

---

[1] I do not address the even more complicated subject of application of the fifty percent and seventy-five percent rules to concurrent sentences, because the facts of this case do not include concurrent sentences.  But even if those complexities support the wide discretion granted to the DOC by the court's opinion and *Fetzer*, I don't perceive any reason not to apply the legislature's clear rules to consecutive sentences.

one of his separate sentences was subject to the seventy-five percent rule. But his third sentence was subject to the fifty percent rule, not the seventy-five percent rule. In doing so, the DOC indisputably extended Owens' parole eligibility date beyond the date that would be mandated by the application of the two different percentages of time served statutes to each of his sentences.

¶ 34 The court holds, in reasonable reliance on *Fetzer*, that the continuous sentence rule trumps the separate legislative enactments regarding the percentage of the sentence that must be served to reach parole eligibility, and that, despite these rather clear statutes, the DOC has discretion to apply the seventy-five percent rule to the entire, continuous sentence.

¶ 35 But, as I illustrate below, it would not be difficult to apply the legislative rules to each of the sentences that comprise the one continuous sentence and remain faithful to the one continuous sentence rule. Doing so, in my view, respects the legislature's exclusive authority to set the rules for parole eligibility and does nothing to prevent the DOC from also complying with the one continuous sentence rule.

¶ 36     A hypothetical illustrates the mischief created by the grant of discretion to the DOC.  Take the situation where the offender is committed under three consecutive sentences: a twenty-five-year sentence for a crime that is subject to the fifty percent parole eligibility rule and two separate sentences of five years, one of which is subject to the seventy-five percent rule and the other of which is subject to the fifty percent rule.  As I read *Fetzer,* the DOC might act within its discretion to treat the entire continuous sentence as subject to the seventy-five percent rule, resulting in parole eligibility after serving 26.25 years.[2]  But if the percentage of time served statutes were applied to each of the sentences, the offender would be eligible for parole in 18.75 years.

¶ 37     The court would say, I'm sure, that no one, much less the DOC, has unbridled discretion and that the exercise of such discretion is reviewable by this court.  But how do the judges of this court decide whether the parole eligibility difference reflected in my hypothetical would be an abuse of discretion?  At what point does

---

[2] For purposes of this illustration, I have ignored any other credits to which the offender may be entitled.

the DOC abuse its discretion in the application of such a rule?  Is there some percentage deviation that renders the exercise of discretion unreasonable?  I can't perceive any principled basis to make such determinations.

¶ 38     We exercise appellate jurisdiction in many circumstances requiring us to determine whether a lower court has properly exercised its discretion, and sometimes the questions are close.  As with the operation of executive departments, judicial discretion is an essential component of the operation of the judicial branch.  But when the legislature has spoken on the precise issue and when the vagaries of such executive and judicial discretion can be avoided by the application of clear statutes, I see no reason or justification to go the discretion route.

¶ 39     Accordingly, while I join the court's opinion, the supreme court is not itself bound by *Fetzer* and I respectfully suggest that either the supreme court take a second look at this or the General Assembly clarify that it meant what it said when it prescribed the percentages of sentences served to determine parole eligibility.